Andre K. TIETGEN, Plaintiff,

v.

BROWN'S WESTMINSTER MOTORS,
INC., et al., Defendants.

C.A. No. 95–1025–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 18, 1996.

Candace S. McCall, Candace McCall, P.C., Fairfax, Virginia, for Plaintiff.

Richard V.W. Adams, Jeffrey A. Huber, Walton & Adams, P.C., McLean, Virginia, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This employment discrimination case presents questions that test the boundaries of Title VII.

Plaintiff, a male, alleges that his supervisor, also male, subjected him to sexual harassment, thereby discriminating against him on the basis of his sex. He further alleges that after complaining about this discrimination, he was transferred to another, related company and then fired in retaliation for having registered discrimination complaints with the managers of the first company, who were also managers of the second company. The two companies, both defendants in this action, deny violating plaintiff's rights under Title VII, arguing that Title VII does not reach same-gender sexual harassment. They also assert that the case is not properly brought because plaintiff failed to exhaust his administrative remedies by omitting a claim and one of the defendants from the administrative charge. And finally, defendants contend that because they are separate corporate entities, plaintiff may not hold one responsible for actions taken by the other. On these grounds, defendants seek dismissal of the action pursuant to Rule 12(b)(6), Fed.R.Civ.P. Accordingly, the questions raised by the dismissal motion are:

(i) Is plaintiff's retaliatory discharge claim now barred because his administrative charge listed only a hostile environment sexual harassment claim and omitted mention of the retaliatory discharge claim?

(ii) Can a corporate entity be sued under Title VII if it was not itself named in the plaintiff's administrative charge, but is closely affiliated with another entity that was so named?

(iii) Is same-sex sexual harassment, that is, harassment where both the harasser and the victim are the same gender, actionable under Title VII?

(iv) Under what circumstances will two closely affiliated corporations be held to be joint "employers" within the meaning of Title VII?

## I.[1]

In April 1994, defendant Brown Westminster Motors, Inc., d/b/a Brown's Mitsubishi ("Brown's Mitsubishi"), hired plaintiff Andre Tietgen to work as a car salesman. Joel Archer was hired by Brown's Mitsubishi one

---

1. For purposes of defendants' motion to dismiss, Tietgen's factual allegations are taken to be true. *See* Fed.R.Civ.P. 12(b)(6); *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976).

month later as manager for both new and used car sales. Archer's position as manager involved supervising the sales force, including Tietgen.

Soon after Archer joined the staff of Brown's Mitsubishi, he began making sexual remarks to Tietgen. These sexual remarks included solicitation for sexual favors. And it was apparent that these solicitations were in earnest, for when his advances were rejected, Archer began subjecting Tietgen to a campaign of ridicule, intimidation, embarrassment, and harassment at work. Tietgen complained about Archer's behavior at least three times to Rick Piland, general manager of both defendants, Brown's Mitsubishi and Brown's Nissan Pontiac & Subaru Inc. ("Brown's Pontiac"). Piland took no action on these complaints. Tietgen also complained about Archer's behavior to Donald Padgett, another Brown's Pontiac manager.[2] Like Piland, Padgett did nothing. When Tietgen specifically asked Padgett whom he should contact about a discrimination complaint, he was referred back to Piland. He then lodged his complaints about Archer with Piland once more, again to no avail.

Archer's offensive behavior continued, becoming by early August 1994 "uncontrollable and bizarre." This prompted Tietgen to request a transfer to another, related dealership. Piland approved the transfer, and Tietgen began working at Brown's Pontiac on August 19, 1994.[3] One week later, however, on August 26, 1994, Tietgen was told that "because of what they had heard about [Tietgen's] complaints at Brown's Mitsubishi, Brown's Mitsubishi/Brown's Pontiac was terminating him." While the complaint does not identify who "they" were, the context and other allegations suggest that "they" refers to managers of Brown's Pontiac who were also managers of Brown's Mitsubishi.

After being discharged, Tietgen complained to Piland about both his discharge and Archer's earlier discrimination. He also complained to Charles Stringfellow of Brown's Pontiac that he had been fired for complaining of sexual advances by Archer, and requesting that something be done to stop Archer's solicitation and harassment. These appeals, like Tietgen's earlier complaints to Piland and Padgett, produced no investigation or corrective action.

On November 9, 1994, Tietgen filed a charge of discrimination with the Fairfax County Human Rights Commission. The charge alleges that Archer solicited sexual intercourse from him and that he complained to his superiors about this, but that no corrective action was taken even though the harassment continued. The charge then states, "Mr. Archer resigned in mid-August 1994 and I transferred shortly after Mr. Archer resigned.... I believe that I have been discriminated against because of my sex (male) and subjected to a hostile work environment because the respondent took no corrective action." Absent from the charge was any reference to a claim for retaliatory discharge. Following receipt of a Notice of Right to Sue from the EEOC on May 6, 1995, Tietgen filed this suit on August 1, 1995. The complaint, as amended, alleges two violations of Title VII: (i) discrimination on the basis of Tietgen's sex (hostile environment) (Count I), and (ii) retaliatory discharge (Count II).

## II.

■ A threshold issue is whether Tietgen has failed to exhaust his administrative remedies for either of his claims. This is important because a federal court may not assume jurisdiction over unexhausted claims. *Davis v. North Carolina Dep't of Correction*, 48 F.3d 134, 137 (4th Cir.1995). Disputes over whether administrative remedies have been properly exhausted in Title VII suits typically occur in two circumstances: (i) where a party not named in the administrative charge is named in the Title VII suit, and (ii) where a claimant omits specific mention of a claim from the administrative charge, but then includes the claim in the suit, contending that

---

2. Although the complaint does not specifically allege that Padgett also worked at Brown's Mitsubishi, the context suggests that Padgett was a manager for both dealerships.

3. Approximately contemporaneously with Tietgen's transfer, Archer resigned from Brown's Mitsubishi.

the claim stated in the charge essentially embraces the omitted claim. Both circumstances exist in this case, and each is separately addressed.

### A.

■ In Count I, Tietgen alleges that Archer sexually harassed him, and that the dealerships' refusal to remedy the situation renders them liable for the Title VII violation. Defendants, for their part, contend that Brown's Pontiac should not be included in this count because Tietgen's EEOC charge names only Brown's Mitsubishi.

As a general matter, it is clear that an aggrieved employee may sue only those persons or entities named as respondents in his administrative charge. *See* 42 U.S.C. § 2000e–5(f)(1) (authorizing suit "against the respondent named in the [administrative] charge"); *see also Alvarado v. Board of Trustees*, 848 F.2d 457, 458 (4th Cir.1988) (citing 42 U.S.C. § 2000e–5(f)(1) for proposition that suit may be brought *only* against respondent named in administrative charge). Construed strictly, however, this requirement could present a virtually insurmountable barrier for Title VII claimants, many of whom file administrative charges without the assistance of counsel. Recognizing this, courts have construed this requirement liberally in favor of *pro se* Title VII claimants.[4] For instance, the Fourth Circuit has read the technical naming requirement of 42 U.S.C. § 2000e–5(f)(1) to allow Title VII plaintiffs to sue parties not named in an administrative charge where the unnamed party is "func-

tionally identical" to a named party. *See Alvarado*, 848 F.2d at 460. Other courts (including this one) have recognized another, apparently similar exception to the naming requirement known as the "substantial identity" test.[5] This exception applies "where there is substantial, if not complete identity of parties," to avoid denying jurisdiction based on "unnecessarily technical and restrictive readings" of the statute. *EEOC v. American Nat'l Bank*, 652 F.2d 1176, 1186 n. 5 (4th Cir.1981) (quoting *Chastang v. Flynn & Emrich Co.*, 365 F.Supp. 957, 964 (D.Md. 1973)), *cert. denied*, 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982). Although the Fourth Circuit has not yet explicitly adopted the "substantial identity" test, it has indicated its approval of the test in *dictum. See id.; see also Alvarado*, 848 F.2d at 461 (noting Fourth Circuit's *dictum* in *American Nat'l Bank*). No court, it appears, has considered whether there is any significant difference between the "substantial identity" and "functional identity" exceptions to the naming requirement. Perhaps this is because the difference is merely one of the degree or extent of the affinity or equivalence between the entities in question.

In any event, the statutory naming requirement is no threshold bar to Tietgen's claim because he has alleged the requisite "substantial identity." He has also alleged facts in the complaint that suggest the dealerships are under common control, including specifically that the same persons exercised control over employment decisions at both dealerships. Given these allegations, defen-

---

4. *See, e.g., Alvarado*, 848 F.2d at 460 (noting that courts routinely construe naming requirement liberally); *Kouri v. Todd*, 743 F.Supp. 448, 451 (E.D.Va.1990) (same); *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977) ("We cannot believe Congress intended that a [layman] filing charges should accurately ascertain, at the risk of later facing dismissal of [his] suit, at the time the charges were made, every separate entity which in some way may have violated Title VII."); *see also Love v. Pullman Co.*, 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972) (holding that administrative filing requirements of Title VII should be liberally applied to vindicate rights of aggrieved persons, because strict construction is "particularly inappropriate in a statutory scheme in which laymen ... initiate the process").

5. *See Kouri*, 743 F.Supp. at 451. The leading case applying the "substantial identity" exception is *Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3d Cir.1977), which enunciated a four-part balancing test for determining whether suit may proceed against a party not named in an administrative charge. A number of other circuit courts then adopted the *Glus* test. *See Virgo v. Riviera Beach Ass'n, Ltd.*, 30 F.3d 1350, 1359 (11th Cir. 1994); *Johnson v. Palma*, 931 F.2d 203, 209–10 (2d Cir.1991); *Romain v. Kurek*, 836 F.2d 241, 245–46 (6th Cir.1987); *Eggleston v. Chicago Journeymen Plumbers' Local 130*, 657 F.2d 890, 905–07 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982); *Romero v. Union Pacific Railroad*, 615 F.2d 1303, 1311 (10th Cir.1980).

dants' attack on this ground cannot succeed at this stage of the case. Of course, it is unclear whether Tietgen's proof will ultimately establish the requisite functional or substantial identity of the two dealerships, a matter defendants may later test by way of motions pursuant to Rules 50 or 56, Fed. R.Civ.P. For now, Brown's Pontiac remains a defendant.

## B.

■ Defendants next contend that Count II is not properly before the Court because the claim asserted in that count—retaliatory discharge—is omitted from and unrelated to Tietgen's administrative charge. In most instances, a Title VII plaintiff may sue only for alleged violations that were properly set forth in his administrative charge. *See* 42 U.S.C. § 2000e–5(b). It is undisputed that, strictly speaking, Tietgen's EEOC charge does not meet this requirement. The charge not only omits reference to a retaliation claim, but also fails to mention that Tietgen was discharged. Moreover, the charge does not set forth any facts from which retaliatory discharge could be inferred, despite the fact that the administrative · charge was filed months after the discharge occurred.

Yet, as with the naming requirement, the requirement for all claims in the suit to have been named or listed in the administrative charge has not been applied with unyielding rigidity. Instead, courts, once again recognizing that many Title VII claimants proceed *pro se* in the administrative arena, have allowed claims not specifically mentioned in the administrative charge to be included in a Title VII suit where a reasonable administrative investigation of the specifically listed claim or claims would have disclosed the unnamed claim. *See Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995); *EEOC v. General Elec. Co.*, 532 F.2d 359, 366 (4th Cir.1976). This flexibility accommodates both Title VII's broad remedial purposes and its requirement that any federal suit be preceded by an administrative procedure providing notice to the accused and an opportunity for conciliation efforts by the EEOC. *General Elec.*, 532 F.2d at 364–66.

This rule of liberality is of no aid to Tietgen; his case does not fit the rule. No reasonable administrative review or investigation of the hostile environment claim specified in his EEOC charge would have turned up the unmentioned retaliation claim. This is because the two claims rest on different sets of underlying facts. Anyone investigating Tietgen's administrative allegations of harassment would reasonably conclude that the harassment ended when Archer resigned and Tietgen changed dealerships. This conclusion, in turn, would surely lead a reasonable investigator to end his inquiries at that point, without reaching anything that happened to Tietgen after he ceased working at Brown's Mitsubishi. In other words, a reasonable investigation based on Tietgen's EEOC charge would naturally have proceeded from start to finish without encountering the issue of his termination.[6] Tietgen's claim that his termination was based on retaliation thus falls too far outside the scope of his administrative charge to be asserted in this forum.[7] Count II must be dismissed.

## III.

■ Count I, which survives threshold exhaustion attack, is further challenged by de-

---

**6.** Nothing in *Magnuson v. Peak Technical Services, Inc.*, 808 F.Supp. 500 (E.D.Va.1992), is to the contrary. There, this Court held that a plaintiff whose EEOC charge listed only discriminatory discharge had also exhausted his administrative remedies with regard to a claim of retaliation, even though the EEOC complaint did not specifically mention retaliation. *See Magnuson*, 808 F.Supp. at 514–15 n. 12. The reasoning in *Magnuson* was that a reasonable EEOC investigation of the listed discriminatory discharge claims would have disclosed the omitted retaliation claim. In *Magnuson*, unlike the instant case, the listed and omitted claims shared a common nucleus of facts, namely those relating to the plaintiff's termination.

**7.** A different result would obtain had Tietgen been discharged *after* filing an administrative charge. In that situation, there would be no need to require him to file a second EEOC charge to assert that he was retaliated against for filing the first. *See Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir.1992) (joining other circuits in holding that plaintiff asserting Title VII claim of retaliation for filing previous EEOC charge need not exhaust administrative remedies with respect to that claim).

fendants on the ground that the same-gender harassment claim there alleged is beyond the reach of Title VII. This vexing question has been addressed, but not resolved in this circuit. Thus, in *Hopkins v. Baltimore Gas & Electric Co.*, 77 F.3d 745 (4th Cir.1996), a panel of the Fourth Circuit upheld the district court's grant of summary judgment in a hostile environment case on the ground that the alleged harassment was neither severe nor pervasive enough to create an environment that would be perceived by a reasonable person as hostile or abusive. One panel member, Judge Niemeyer, went beyond this holding to conclude, *obiter*, that same-sex sexual harassment could in some circumstances form the basis for a claim under Title VII. *See id.* at 749–52. The remaining panel members, Chief Judge Wilkinson and Judge Hamilton, declined to join in this part of Judge Niemeyer's opinion, noting in their concurring opinion that Judge Niemeyer's conclusion with regard to same-sex sexual harassment was unnecessary to the resolution of the case. *Id.* at 755 (Wilkinson, C.J., and Hamilton, J. concurring). *Hopkins* is therefore inconclusive on the issue.

The issue of same-gender sexual harassment was also addressed by a Fourth Circuit panel in *McWilliams v. Fairfax County Board of Supervisors*, 72 F.3d 1191 (4th Cir. 1996). There, the panel flatly held that a claim for hostile environment does not lie under Title VII where the alleged victim and alleged harassers are heterosexuals of the same sex. *Id.* at 1195. *McWilliams* expressly left open, however, whether a sexual harassment claim would lie in a factual situation different from the one there presented. *Id.* & nn. 4–5. Thus, neither *Hopkins* nor *McWilliams* provides an answer to the precise question presented here: Does sexual solicitation of a male employee by a male supervisor state a cause of action under Title VII? [8]

 The search for the answer to this question must begin with the statute. Title VII flatly and broadly prohibits "discrimination against any individual ... because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). The term "sex" in the statute is synonymous with "gender." *Hopkins*, 77 F.3d at 749 n. 1. Conspicuously, the statute does not mention the *employer's* gender. It follows, therefore, that the statute prohibits an employer of whatever gender from discriminating against an employee on the basis of the employee's gender. Put another way, the statute prohibits all employment discrimination based on an employee's sex or gender, whatever employer and employee gender combination may be involved. Contrary to defendants' contention, this prohibition is not limited to situations where the sex or gender of the employer or its decisionmaking agent is different from that of the employee. So same-gender discrimination— i.e., where the gender of the employer or its decisionmaking agent is the same as that of the employee discriminated against—is within the statute's reach provided the discrimination occurs *because of* the employee's gender.

This point is worth illustrating in the hostile environment context.[9] Hostile environment sexual harassment claims under Title VII typically arise in two circumstances that, while different, are equally actionable. In the first typical circumstance, a male subjects a female to unwanted sexual touching, invitations, and innuendo. *See, e.g., Paroline v. Unisys Corp.*, 879 F.2d 100 (1989), *vacated in part on other grounds*, 900 F.2d 27 (4th Cir.1990). It is the essence of sexual conduct between two individuals that the one initiat-

---

**8.** The fact that this case alleges solicitation for sexual favors distinguishes it from *McWilliams*. Given this solicitation, and assuming, as the complaint invites, that the solicitation was in earnest, it is reasonable to conclude at this stage that the alleged harasser is not a heterosexual of the same gender as the alleged victim, as was true in *McWilliams*. Rather, the inference warranted from the complaint's allegations is that the alleged harasser is either homosexual or bisexual.

**9.** The point could as easily be demonstrated in the context of quid pro quo harassment; however, Tietgen's complaint does not state a claim for that form of sexual discrimination, as he has not alleged that his refusal of Archer's advances led to the grant or denial of a tangible quid pro quo, as distinguished from a hostile or abusive job atmosphere. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986).

ing or inviting the conduct normally does so because of the other's sex.[10] Thus, allegations of this type of harassment can state a cause of action under Title VII.[11] The second typical hostile environment circumstance involves a male subjecting one or more females to hostile, rude, or disparaging treatment that differs either in kind or degree from the treatment other males receive. *See, e.g., Harris,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295;[12] *Kopp v. Samaritan Health System, Inc.,* 13 F.3d 264 (8th Cir. 1993). In these circumstances, the key is that "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed," a fact that satisfies Title VII's requirement that the harassment be "because of [the victim's] ... sex." *Harris,* 510 U.S. at ——, 114 S.Ct. at 372 (Ginsburg, J., concurring).

The common element in both these circumstances that makes them actionable under Title VII is one of causation: the harassment allegedly occurred *because of* the victim's gender. And this common element demonstrates that changing the gender of the harasser in either circumstance does not necessarily remove the acts from the reach of Title VII. If a male employer touches a male employee in a sexual manner, or invites the male employee to engage in sexual conduct, the employer likely does so because the employee is male. In other words, the male employer in this circumstance is probably homosexual or bisexual.[13] And, although it is less self-evident, one can imagine situations where a male supervisor might subject his male employees to vitriolic treatment because he prefers working with females, or, in other words, because of the male employees' sex. The point bears repeating: the key is

the cause of the harassment, not the gender of the harasser.

Yet, causation is less evident in same-sex sexual harassment cases than in those involving individuals of opposite gender because, simply stated, society as a whole has more experience with heterosexual relationships and heterosexual interaction. Notwithstanding this, the plaintiff must ultimately prove the causation element as part of his Title VII prima facie case. If he cannot offer evidence tending to prove that he was harassed because of his sex, as opposed to some other reason, his claim fails. In the more typical cases noted above—where a male employer subjects a woman to sexual touching, or to more harsh treatment than similarly situated males—the element of causation is self-evidently present and hence rarely disputed by the defendant. In same-sex harassment cases, by contrast, causation is much less evident and may be difficult to prove. This is so because the allegedly harassing conduct is often capable of being construed not only as actionable harassment, but also, and perhaps more familiarly, as mere locker room antics, joking, or horseplay. The conduct alleged in both *Hopkins* and *McWilliams* was more susceptible of the latter interpretation. Thus, the employee in *McWilliams* complained about being subjected to offensive teasing and jokes. *See McWilliams,* 72 F.3d at 1193. And in *Hopkins,* the employee complained about his supervisor staring at him in the bathroom, kissing him in the receiving line at his wedding, and bumping into him. *See Hopkins,* 77 F.3d at 753. This type of harassing conduct is "sexually neutral or, at most, ambiguous," and, therefore, it may not be within the reach of Title VII. *See id.*

**10.** Under this reasoning, the statute as written may not prohibit sexual harassment by a bisexual harasser. This is so if one assumes that a bisexual chooses whom to solicit for sex according to some criteria other than gender. Of course, this assumption may be false. Instead, it may be that a bisexual solicits a person for sex based on the person's gender, which gender the bisexual prefers at that moment. In any event, this precise question is not presented at this time.

**11.** Of course, the alleged harassment must also be sufficiently severe, regular, and pervasive to

alter the employee's terms or conditions of employment. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

**12.** The Supreme Court in *Harris* described comments from alleged harasser that included "You're a woman, what do you know," and "We need a man as the rental manager." *Harris,* 510 U.S. at ——, 114 S.Ct. at 369.

**13.** *See supra* note 8.

Because this distinction between actionable and nonactionable harassment renders the element of causation less evident in same-sex harassment cases, it is not surprising that recent Fourth Circuit decisions have suggested that a plaintiff in such cases must plead and prove that the alleged harasser was sexually attracted to his victim or homosexual. For instance, Judge Niemeyer in *Hopkins* advocated requiring the plaintiff alleging same-sex sexual harassment to overcome a presumption that the harassing conduct, while perhaps "sexually oriented" or "sexually perverse," occurred for some reason other than gender. *Hopkins*, 77 F.3d at 752.[14] And, for the same reason, *McWilliams* states, in *dicta*, that "the fact of homosexuality (to include bisexuality) should be considered an essential element of the claim, to be alleged and proved." *McWilliams*, 72 F.3d at 1195 n. 5. These suggestions are entirely understandable in the context of those cases, where the facts as alleged did not provide any assurance that the alleged conduct occurred because of the employee's gender. This case, however, is different. The earnest sexual solicitation alleged in Tietgen's complaint provides a firm basis for the inference that he was harassed because of his gender.

Indeed, the allegations in the complaint invite, if not compel, the conclusion that his harasser was homosexual or bisexual. The extra matters of pleading and proof suggested in *Hopkins* and *McWilliams* are simply unnecessary in this case. If Tietgen can show by a preponderance of the evidence that Archer did indeed solicit sexual acts from him, the jury may properly infer that Archer did so because of Tietgen's sex within the meaning of Title VII. Tietgen's complaint shows that he intends to offer such proof, and it is therefore adequate to withstand this motion to dismiss.[15]

A growing body of case law from other jurisdictions supports the view that Title VII reaches same-gender sexual harassment. The Third Circuit and District of Columbia Circuit, in *dicta*, have recognized this as a potential cause of action for almost twenty years.[16] Other circuits have more recently acknowledged the possibility of same-sex sexual harassment.[17] And a number of district courts around the country, some following the lead from the circuits, have expressly held that this cause of action is available under Title VII.[18] To the extent that other

---

14. More specifically, Judge Niemeyer reasoned that in the typical case where an individual is sexually harassed by someone of the opposite sex, there is a presumption that the harassment is "because of" the victim's gender. This presumption stems from "the reality [of] sexual conduct." *Hopkins*, 77 F.3d at 752. "But when the harasser and the victim are the same gender, the presumption is just the opposite because such sexually suggestive conduct is usually motivated by entirely different reasons." *Id.* According to Judge Niemeyer, an employee seeking to recover for sexual harassment by someone of his same gender thus must overcome the presumption that the harassment was *not* because of the employee's gender, but, instead, was motivated by some other reason. As Judge Niemeyer quite sensibly noted, "[t]he principal way in which this burden may be met is with proof that the harasser acted out of sexual attraction to the employee." *Id.*

15. Of course, it is also open to Tietgen to adduce other, extrinsic proof of the alleged harasser's sexual preference.

16. *See, e.g., Bundy v. Jackson,* 641 F.2d 934, 942 n. 7 (D.C.Cir.1981); *Barnes v. Costle,* 561 F.2d 983, 990 n. 55 (D.C.Cir.1977); *Tomkins v. Public Service Elec. & Gas Co.,* 568 F.2d 1044, 1047 (3d Cir.1977).

17. *See, e.g., Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995); *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1464 (9th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995); *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 148 (2d Cir.1993) (Van Graafeiland, J., concurring), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *cf. Morgan v. Massachusetts Gen. Hosp.,* 901 F.2d 186, 192 (1st Cir.1990) (finding that sexual advances by one male co-worker to another were insufficiently severe and pervasive to engender Title VII liability). *But see Garcia v. Elf Atochem North America,* 28 F.3d 446, 451–52 (5th Cir.1994) (stating, without discussion, that "[h]arassment by a male supervisor against a male subordinate does not state a claim under Title VII even though the harassment has sexual overtones," because "Title VII addresses gender discrimination").

18. *See, e.g., Sardinia v. Dellwood Foods, Inc.,* 1995 WL 640502 (S.D.N.Y.1995); *Raney v. District of Columbia,* 892 F.Supp. 283 (D.D.C.1995); *Griffith v. Keystone Steel & Wire,* 887 F.Supp. 1133 (C.D.Ill.1995); *Pritchett v. Sizeler Real Estate Mgmt. Co.,* 1995 WL 241855 (E.D.La.1995); *EEOC v. Walden Book Co.,* 885 F.Supp. 1100, 1103 (M.D.Tenn.1995); *Prescott v. Independent Life & Accident Ins. Co.,* 878 F.Supp. 1545

cases have held to the contrary, they have generally done so in factual circumstances akin to those in *Hopkins* and *McWilliams*, where it was unclear that the employee was being subjected to harassment because of his sex.[19] Thus, in *Garcia v. Elf Atochem North America*, 28 F.3d 446 (5th Cir.1994), the only case from a circuit court to so hold, the plaintiff complained of two isolated incidents in which a supervisor grabbed him in a manner that might also have been characterized as horseplay. And in *Goluszek v. Smith*, 697 F.Supp. 1452 (N.D.Ill.1988), the case most widely cited for the proposition that same-sex sexual harassment is not actionable under Title VII, the plaintiff was an "unsophisticated" male who had been teased *about women* by co-workers using crude language and nude photographs. There, the court quite sensibly found the alleged harassment to be outside the purview of "the type of conduct Congress intended to sanction when it enacted Title VII." *Id.* at 1456. Simply put, the plaintiff in *Goluszek* was not harassed because of his sex. Rather, he was harassed " 'because of' [his] known or believed prudery, or shyness, or other form of vulnerability to sexually-focused speech of conduct," or because of the perpetrators' own "vulgarity," "insecurity," or "meanness of spirit." *See McWilliams*, 72 F.3d at 1196. This case, however, is clearly different. Because the very nature of Tietgen's allegations demonstrates that the conduct could only have occurred on the basis of his sex, those allegations clearly fall within the category of conduct Congress sought to prohibit by enacting Title VII. Defendants' effort to defeat Count I on this threshold ground is unavailing.[20]

■ Defendants also argue that Tietgen's hostile environment claim must fail because Tietgen does not specifically allege that Archer's actions interfered with his work performance; rather, he asserts that defendants' actions caused him "serious harm." Under the Supreme Court's decision in *Harris v. Forklift Systems*, however, whether the alleged conduct unreasonably interfered with the plaintiff's work performance is only one among many factors that may be considered in determining whether the environment was abusive or hostile in violation of Title VII. *See Harris*, 510 U.S. at ——, 114 S.Ct. at 370. Thus, Tietgen need neither allege nor prove such interference with his work performance, and defendants' argument to the contrary simply has no merit. The motion to dismiss Count I of Tietgen's claim on this ground must therefore be denied.

## IV.

■ Defendants, however, launch a final attack at Count I, this one aimed only at eliminating Brown's Pontiac from the claim. Specifically, defendants contend that Brown's Mitsubishi, not Brown's Pontiac, was Tietgen's employer at the time of the alleged harassment.

Title VII defines an "employer" as an entity "engaged in an industry affecting commerce who has fifteen or more employees," one of whom is (or was) the employee complaining of actionable discrimination. *See* 42 U.S.C. § 2000e(b). Only entities that meet this statutory definition can be held liable for an alleged violation of Title VII. And one corporate entity does not meet the definition merely by virtue of its affiliation with another corporation that is a statutory employer. Rather, the first entity will be deemed the employer of the second, affiliated entity only if (i) the first controls the second's employment decisions, or (ii) the first so completely dominates the second that the two corporations are effectively the same entity. *Johnson v. Flowers Industries, Inc.*, 814 F.2d 978, 980–81 (4th Cir.1987). If neither of these factors is present, the first corporation is not the plaintiff's "employer" and thus cannot be

(M.D.Ala.1995); *Polly v. Houston Lighting & Power Co.*, 825 F.Supp. 135 (S.D.Tex.1993); *Marrero-Rivera v. Dept. of Justice*, 800 F.Supp. 1024 (D.P.R.1992); *Wright v. Methodist Youth Services*, 511 F.Supp. 307 (N.D.Ill.1981).

**19.** *See, e.g., Garcia*, 28 F.3d at 450; *Ashworth v. Roundup Co.*, 897 F.Supp. 489 (W.D.Wash.1995);

*Myers v. City of El Paso*, 874 F.Supp. 1546 (W.D.Tex.1995); *Goluszek v. Smith*, 697 F.Supp. 1452 (N.D.Ill.1988).

**20.** To be sure, Tietgen still bears the burden of proving his allegations, including causation, and defendants may attack his claim on this ground on summary judgment.

held responsible for impermissible discrimination, within the meaning of Title VII, alleged against the second.

Given these principles, defendants' attack fails at this stage. Tietgen's complaint contains numerous allegations of joint and common control. Most importantly, he claims that the senior management of Brown's Westminster Motors, Inc. have substantial decisionmaking authority and control with respect to personnel decisions at both dealerships, and that the corporations are affiliated for purposes of employment decisions. An agent of an employer is included in the statutory definition of any employer. 42 U.S.C. § 2000e(b). Thus, if Tietgen can prove that the persons liable for creating the hostile work environment to which he was subjected were agents of Brown's Pontiac, Brown's Pontiac will indeed be his statutory employer within the meaning of Title VII. *See also Magnuson*, 808 F.Supp. at 507–08 (construing "employer" under Title VII to include those who control some aspect of individual's compensation, terms, conditions, or privileges of employment). And, if the allegations in his complaint are true, it may well be that the agents of Brown's Mitsubishi—who allegedly created the hostile environment or refused to take steps to alleviate it, thereby violating Title VII—are also agents of Brown's Pontiac. Defendants' argument here is too fact dependent to succeed on a motion to dismiss.

An appropriate Order shall enter.[21]

---

21. Contemporaneously with the issuance of this Memorandum Opinion, the parties advised the Court that plaintiff had decided to nonsuit the action. Accordingly, no Order need be entered.