Michael R. DIXON, Plaintiff,

v.

**STATE FARM FIRE AND CASUALTY INSURANCE COMPANY,**
Defendant.

Civil Action No. 4:94cv00165.

United States District Court,
E.D. Virginia,
Newport News Division.

May 28, 1996.

Paul S. Reichler, Kathleen Milton, Reichler, Milton & Medel, Washington, DC, J. Gray Lawrence, Jr., Faggert & Frieden, P.C., Chesapeake, VA, for State Farm Fire and Casualty Insurance Company.

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

JACKSON, District Judge.

Pending before this Court is Plaintiff Michael Dixon's sexual harassment claim against his previous employer, Defendant State Farm Fire and Casualty Insurance Company ("State Farm"), pursuant to Title VII, 42 U.S.C. § 2000e–2(a)(1) (1994). State Farm has moved for summary judgment. This Court heard oral argument on May 9, 1996, and the matter is now ripe for disposition. The Court **GRANTS** the motion as to the *quid pro quo* claim and **DENIES** the motion as to the hostile work environment claim.

### I. FACTS

Michael Dixon worked at State Farm as a claims specialist from July 21, 1986 until May 21, 1993, when he resigned. (Compl. ¶ 5.) His immediate supervisor was Gary Clatterbuck. (Comp. ¶ 6.) Over the course of five years, Clatterbuck gave Plaintiff gifts, sent Plaintiff fifty-eight cards and letters, subjected Plaintiff to unwanted hugs three times behind the closed doors to his office, drove to the homes of Plaintiff and Plaintiff's friends after work hours, and called Plaintiff nightly. (Comp. ¶¶ 12–18.) Defendant claims that Clatterbuck's overtures were merely attempts to help Plaintiff overcome his addiction to drugs. (Mem.Supp.Mot.Summ.Judg. at 18–24.) Plaintiff, on the other hand, claims that when he refused Clatterbuck's advances he suffered retaliation, which included increased work assignments and a hostile work environment. (Comp. ¶ 22.)

### II. LEGAL STANDARD

To succeed on summary judgment motions, movants must show that no reasonable factfinder could find for Plaintiff, based on material submitted. *Anderson v. Liberty*

Michael McLain Maguire, Grafton, VA, Beverly Ann Rebar, Shuttleworth, Ruloff & Giordano, Virginia Beach, VA, Lisa Palmer O'Donnell, Shuttleworth, Ruloff & Giordano, Virginia Beach, VA, for Michael R. Dixon.

*Lobby,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the burden shifts to the nonmoving party to set forth specific facts showing genuine issues for trial. *Id.* at 256–57, 106 S.Ct. at 2514–15; *accord Sylvia Dev. Corp. v. Calvert County, Md.,* 48 F.3d 810, 817 (4th Cir.1995). Thus, summary judgment is appropriate when the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c).

In the instant case, the Court notes the importance of this standard of proof. Although Defendant urges the Court to make delicate factual findings concerning the nature of the relationship in this case, the Court is wary of substituting its determinations for a jury's on this issue.

## III. DISCUSSION

Plaintiff originally styled his complaint to include a *quid pro quo* claim and a hostile work environment claim.

### A. Quid Pro Quo Claim

■ Although Plaintiff protested the continued validity of his *quid pro quo* claim at oral argument, he has failed to submit any response to Defendant's challenge to this claim. It is well settled that an adverse party may not rest on its pleadings when faced with a motion for summary judgment. FED.R.CIV.P. 56(e). Instead, the opposing party must go beyond its pleadings to demonstrate that a triable issue of fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Because Plaintiff here attempts to rest on the complaint, he has not met his burden on this claim. The Court therefore **GRANTS** Defendant's motion concerning this claim.

### B. Hostile Work Environment

■ Defendant argues that Plaintiff has failed to make a *prima facie* case of hostile work environment, which requires proof that the conduct: (1) was unwelcome; (2) was based on the employee's sex; (3) was sufficiently severe or pervasive to create an abu-sive working environment; and (4) could be imputed to the employer. *Swentek v. USAIR, Inc.,* 830 F.2d 552, 557 (4th Cir. 1987).

### 1. Whether the Conduct was Unwelcome

The issue concerning this prong of the test is particularly complicated in this case, given the nature of the originally friendly relationship between Plaintiff and Clatterbuck. Plaintiff claims that at some point, Clatterbuck's behavior became sexual in nature, (Dixon Dep. at 484), and that whatever friendliness Plaintiff reciprocated was motivated by his fear of retaliation in the form of Clatterbuck's anger, silent treatments, rudeness, harsher management, and physical harm. (Dixon Dep. at 231–32.)

State Farm, on the other hand, claims that Clatterbuck's reaching out to Plaintiff was the result of Plaintiff's own needs. It portrays Plaintiff's behavior against a backdrop of child abuse and paints him as an addict whom Clatterbuck felt compelled to befriend and even "save". (Mot.Summ.Judg. at 29–31.) These competing characterizations reveal genuine issues of material fact concerning this issue.

### 2. Whether the Conduct Occurred Because of Plaintiff's Sex

■ Title VII only prohibits discrimination that occurs "because of" the victim's sex. 42 U.S.C. § 2000e–2(a)(1) (1994). To challenge this aspect of Plaintiff's case, Defendant relies heavily on *McWilliams v. Fairfax County Bd. of Supervisors,* 72 F.3d 1191 (4th Cir.1996), which interpreted Title VII to exclude sexual harassment complaints when the plaintiff and the alleged harasser are heterosexuals of the same sex. 72 F.3d at 1195. The court reasoned that the absence of the alleged harasser's homosexuality or bisexuality would signify that the conduct at issue did not occur "because of" the employee's "sex". *Id.* at 1196. Thus, it stated in dicta that the perpetrator's homosexuality or bisexuality in a same-sex harassment claim is an essential element of a plaintiff's claim, which must be alleged and proved. *Id.* at 1195 n. 5.

A recent opinion in this district built on an issue left open by *McWilliams* concerning

proof of homosexuality. *Tietgen v. Brown's Westminster Motors, Inc.*, 921 F.Supp. 1495, 1499–1503 (E.D.Va.1996). Despite the plaintiff's failure to allege that his employer was gay or bisexual, the court denied a motion to dismiss on the grounds that he intended to offer proof that the employer solicited sexual acts from him. *Id.* at 1502. Thus, the court found that, unlike cases in which "the facts as alleged did not provide any assurance that he was harassed because of his gender", the allegation of sexual solicitation in that case was sufficient to "invite, if not compel, the conclusion that his harasser was homosexual or bisexual." *Id.*

In the case at bar, Plaintiff attempts to make a similar showing by his allegations and proof that Clatterbuck hugged him, (Mem.Opp.Summ.Judg. at 11), and that Clatterbuck engaged in obsessive behavior motivated by sexual attraction to Plaintiff, including dropping by his house, frequently calling him at home, and sending letters and cards communicating love and jealousy of other people close to Plaintiff. (*Id.* at 9–10.) Here, therefore, in contrast to *McWilliams, see infra* n. 2, Plaintiff has proffered sufficient proof to establish that Plaintiff was harassed because of his gender.

Although Defendant concedes that Mr. Clatterbuck expressed love and affection toward Plaintiff, as well as pain when he felt rejected by Plaintiff, it notes that none of the fifty-eight cards and letters sent to Plaintiff over the five-year period overtly mention sex. (Rebuttal at 13.) Defendant attempted to distinguish *Tietgen* on this basis at oral argument: that is, in contrast to sexually soliciting Plaintiff, Clatterbuck intended merely to help Plaintiff overcome his addiction to cocaine and his related problems at work. (Rebuttal Mem. at 14 n. 1.) In an apparent attempt to bring this case under the umbrella of *McWilliams*, Defendant claims that Clatterbuck's behavior was at most "merely suggestive of homosexuality" or "homosexual innuendo".[1] (Rebuttal Mem. at 4–5.) The Fourth Circuit's distinction between such conduct, from which one might infer homosexuality, and "homosexuality-in-fact" seems at best a fine one to make.[2] In the instant case, Plaintiff has presented sufficient evidence on this matter to raise genuine issues of material fact.

### 3. Whether the Conduct was Severe and Pervasive

■ The Court must apply a totality of the circumstances analysis to determine the severity or pervasiveness of the alleged harassment. *Hopkins*, 77 F.3d at 753. Again, the Court's analysis is hindered by the unusual circumstances of this case. Instead of dealing with lewd language and bawdy behavior, this case concerns the degree and meaning of a close relationship between supervisor and employee. *Cf. Hopkins*, 77 F.3d at 753–54 (finding alleged conduct insufficiently severe

---

**1.** The Fourth Circuit indicated in dicta that "homosexual innuendo" and "conduct merely suggestive of homosexuality" are not actionable under Title VII. *McWilliams*, 72 F.3d 1191, 1195 n. 5. Instead, plaintiffs must prove "homosexuality-in-fact". *Id.*

**2.** The Court is aware of the Fourth Circuit's finding that the conduct in *McWilliams*, enumerated only in the dissent, was insufficient to prove homosexuality. The acts included the defendants' fondling an emotionally disabled employee, exposing themselves to him, and simulating oral and anal sex with him. 72 F.3d at 1199 (Michael, J., dissenting). The Fourth Circuit has not provided guidance on what constitutes proof of "homosexuality-in-fact". Regardless, the conduct in the instant case is distinguishable from both *McWilliams* and *Hopkins v. Baltimore Gas and Elec. Co.*, 77 F.3d 745 (4th Cir.1996) (affirming summary judgment where alleged same-sex

harassment, which included lewd and suggestive remarks, was insufficiently severe and pervasive).

Rather than bawdy behavior, the conduct involved a close relationship between supervisor and employee that revealed some degree of intimacy. The effort to pinpoint and prove a "level" of homosexuality evokes Justice Stewart's infamous "I know it when I see it" standard, *see Jacobellis v. Ohio*, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring), and underscores the concern in the *McWilliams* dissent:

> [E]vidence of sexual orientation ... should not be elevated to a required element of plaintiff's proof. That would burden the statute too much because the focus would shift from an examination of what happened to the plaintiff to a pursuit (surely too complicated, far-ranging and elusive) of the "true" sexual orientation of the harasser.

72 F.3d at 1198 (citations omitted) (Michael, J. dissenting).

or pervasive where the conduct took place over seven years with significant time gaps between incidents, was not overt, and occurred in group settings; and citing other cases in which incidents of offensive behavior did not rise to the appropriate level of severity).

Plaintiff alleges that the conduct was indeed pervasive. Clatterbuck's behavior was continuous over the five-year period and directed solely at Plaintiff. (Mem. Opp.Summ.Judg. at 12.) Clatterbuck allegedly called Dixon nightly, hung up, and called back (Dixon Dep. at 83); made unannounced visits to Plaintiff's home after being requested to stop (Dixon Dep. at 83–84); asked Plaintiff to hug him behind the closed doors of his office (Dixon Dep. at 113); and made jealous accusations concerning feelings of rejection (Mem.Opp.Summ.Judg. at 5).

■ Defendant points out that Plaintiff has not claimed that Mr. Clatterbuck's conduct was severe enough to interfere with his work performance. (Rebuttal Mem. at 17.) This allegation, however, is not required to establish severe and pervasive behavior, but merely one factor to be considered. *Tietgen,* 921 F.Supp. at 1503 (E.D.Va.1996) (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 20, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)); *e.g. Hopkins,* 77 F.3d at 753–54 (finding absence of interference with work performance one of three indications that conduct was insufficiently severe and pervasive) (citing *Morgan v. Massachusetts Gen. Hosp.,* 901 F.2d 186, 193 (1st Cir.1990)). At oral argument, Plaintiff claimed that he suffered increased work assignments and a hostile work environment, among other retaliatory effects of Clatterbuck's behavior. (*See also* Dixon Dep. at 231–32.) Ultimately, Plaintiff claims he was forced to resign as a result of Clatterbuck's behavior, and therefore claims loss of job, loss of income, damage to his career, and loss of benefits. (Comp. ¶¶ 33–34.) His claims are sufficient to raise genuine issues of material fact about severity and pervasiveness.

### 4. Whether the Conduct is Imputable to the Employer

■ An employer is liable for sexually harassing conduct by its supervisory employees only when it had "actual or constructive knowledge of the existence of a sexually hostile working environment and took no prompt and adequate remedial action." *Katz v. Dole,* 709 F.2d 251, 255 (4th Cir.1983) (citations omitted). To establish knowledge, plaintiffs "must show that the employer knew or should have known of the harassment, and took no effectual action to correct the situation." *Id.* at 255–56.

The first issue to be resolved is to whom Plaintiff should have complained. Some circuits have indicated that any member of the management level would be sufficient. *E.g. Katz,* 709 F.2d at 256 (holding that an employer can be liable when an employee specifically complains to her superiors); *Dockter v. Rudolf Wolff Futures, Inc.,* 913 F.2d 456, 459 (7th Cir.1990) ("[Plaintiff] did not complain about this conduct to anyone at the management level.... She did not explain ... why she did not complain to [the alleged harasser]'s immediate supervisor...."); *Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir.1982) (noting that plaintiff must "show that [he or] she complained to higher management of the harassment ..."). Others have indicated that plaintiffs must complain to persons with a certain minimum level of responsibility for overseeing working conditions. *E.g. Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486, 1530 (M.D.Fla. 1991) (approving complaints to quartermen and leadermen who monitored work performance and whom employees perceived were appropriate persons to whom to complain about work conditions); *Llewellyn v. Celanese Corp.,* 693 F.Supp. 369, 380 (W.D.N.C. 1988) (approving complaints to dispatchers who had most frequent contact with employees and were responsible for passing information up corporate hierarchy to supervisory personnel).

■ In the instant case, Plaintiff contacted a State Farm supervisor, Al Charles, to complain about Clatterbuck's behavior in the summer of 1991. (Dixon Dep. at 163.) Mr. Charles worked in North Carolina, and was once Plaintiff's supervisor. Defense counsel proffered at oral argument that Charles was a supervisor at the same level in the manage-

ment hierarchy as Clatterbuck. Charles, in turn, promised to inform Mr. Lane, who was both Charles' and Clatterbuck's immediate superior, and in fact did so. (Dixon Dep. at 159.) Mr. Lane took no action upon receiving this information. (Mem.Opp.Summ.Judg. at 14 (citing untranscribed Lane Dep.).) At oral argument, in fact, the parties revealed that Clatterbuck confronted Plaintiff about Charles' report to Lane. The Court finds that the appropriate chain of command was notified of the conduct in question.

Defendant further challenges Plaintiff's complaint to Mr. Charles because Plaintiff did not state explicitly to Mr. Charles that he experienced Clatterbuck's conduct as sexual in nature. (Rebuttal Mem. at 18–19.) Defendant cites *Nelson v. Watergate at Landmark*, 898 F.Supp. 346, 349–50 (E.D.Va.1995) (finding employer not liable for conduct about which plaintiff complained without specifying her concern as a racial issue), to support the proposition that an employer cannot be held liable for offensive conduct that it did not know was sexual, on the grounds that the employer would not know what kind of investigation to pursue.

The instant case, however, is not one in which Plaintiff's complaint was so vague that his audience could not understand that Clatterbuck's conduct seemed to him to be sexual in nature. Evidence of the manifest nature of this inference is Mr. Charles' follow-up question concerning Clatterbuck's sexual orientation. (Dixon Dep. at 160.) The Court finds that the lack of an explicit statement of sexual harassment in this case does not trigger the notification concerns that lie at the core of this requirement.

Defendant claims that proof of the inadequacy of Plaintiff's complaint lies in the company's demotion and removal of Clatterbuck from the Newport News field office to the regional headquarters in Charlottesville immediately upon receiving Plaintiff's May 1993 resignation letter, which complained explicitly about Clatterbuck's behavior. (Mem. Supp.Summ.Judg. at 43.) The Court does not find this evidence persuasive. It declines to hold Plaintiff responsible for the initial inaction of his superior, Mr. Lane, to whom Charles referred his complaint. Further-

more, the explanation for State Farm's taking action only upon receiving the written resignation is far from clear.

■ The Court is mindful that Plaintiff must prove not only that the employer had constructive knowledge of the harassment, but that it failed to take appropriate action. "[W]here an employer implements timely and adequate corrective measures after harassing conduct has come to its attention, vicarious liability should be barred regardless of the specific motivation for the wrongdoing or the particular cause of action." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995); *see also Paroline v. Unisys Corp.*, 879 F.2d 100, 106 (4th Cir.1989) (holding that liability cannot be imputed to an employer where it takes remedial action "reasonably calculated to end the harassment"), *vacated in part on other grounds*, 900 F.2d 27 (4th Cir.1990). Since the Court accepts Mr. Charles as an appropriate supervisor to whom Plaintiff complained in the summer of 1991, rather than finding that the written resignation constituted the first notice to the employer, Defendant's reliance on its action taken in May 1993 is unavailing.

## CONCLUSION

Because genuine issues of material fact exist concerning all four elements of Plaintiff's *prima facie* case, the Court **GRANTS** summary judgment as to Plaintiff's *quid pro quo* claim and **DENIES** Defendant's motion concerning the hostile work environment claim.

The Clerk is **DIRECTED** to send a copy of this order to counsel for Plaintiff and counsel for Defendant.

It is so **ORDERED.**