Edwin Berry MARTIN, Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY COMPANY; Preston Lee Thomasson, an individual; Robert F. Summerlin, an individual; Larry D. Hornbuckle, an individual, Defendants.

No. CV–94–N–2928–S.

United States District Court, N.D. Alabama, Southern Division.

May 23, 1996.

**1046**

Stephen L. Poer, Beverly Poole Baker, Haskell Slaughter Young & Johnston, Birmingham, AL, for plaintiff.

Michael K. Beard, Sharon A. Woodard, Elizabeth S. Webb, Starnes & Atchison, Birmingham, AL, for Preston Lee Thomasson.

Gayle H. Gear, Birmingham, AL, for Robert F. Summerlin.

Douglas L. Key, Joseph E. Bulgarella, Key Frawley Bulgarella & Key, Birmingham, AL, for Larry D. Hornbuckle.

Barbara F. Olschner, Olschner & Hart, Birmingham, AL, for Allstate Insurance Company.

Crawford S. McGivaren, Jr., John Mark Graham, Cabaniss Johnston Gardner Dumas & O'Neal, Birmingham, AL, for Norfolk Southern Railway Company.

## MEMORANDUM OF OPINION

EDWIN L. NELSON, District Judge.

### I. Introduction.

Edwin Berry Martin brings this action against Norfolk Southern Railway Company ("Norfolk Southern"), and Preston Lee Thomasson, Robert F. Summerlin, and Larry D. Hornbuckle, individually, for injuries allegedly sustained as the result of an alleged course of sexual harassment which occurred while he was employed at Norfolk Southern's Norris Yard in Birmingham, Alabama. He makes claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, and Ala-

bama state law. Specifically, he claims that the defendants created a hostile work environment based on sexual harassment. He also alleges state law claims of outrage, invasion of privacy, and assault and battery against all defendants and a FELA claim against Norfolk Southern.

The court presently has for consideration the defendants' motions for summary judgment. The issues have been briefed and the motions are ripe for decision. Upon due consideration, the motions will be granted in part and denied in part.

### II. Statement of Undisputed Facts.

On November 17, 1993, Edwin Berry Martin, ("Martin" or the "plaintiff"), was transferred from South Carolina to Norfolk Southern's Norris Yard in Birmingham, Alabama. At the time of his transfer he held the position of Mechanical Supervisor. In Birmingham, he worked in the diesel shop two nights a week on the third shift and three days a week on the second shift. Larry D. Hornbuckle, a general foreman, was Martin's immediate supervisor on the third shift. In addition, Martin worked with Hornbuckle for an hour during shift change on the three days of the week that he worked second shift. Preston Lee Thomasson worked under Martin's supervision on the third shift two nights a week. Robert F. Summerlin was a mechanical supervisor on the third shift. Summerlin and Martin worked together during shift change three days per week.

During the time they worked together, Martin claims that the defendants engaged in a course of sexual harassment against him. Specifically, Martin alleges the following:

(1) Hornbuckle and Summerlin offered to expose their penises to him;

(2) Hornbuckle and Summerlin asked him to show them his penis;

(3) Hornbuckle grabbed at and pinched him in and around his legs and posterior;

(4) Hornbuckle grabbed at or swatted towards his genitals;

(5) Hornbuckle made improper and inappropriate remarks about his girlfriend;

(6) Hornbuckle and Summerlin told him that he looked like he had AIDS;

(7) Hornbuckle called him and two other employees the "Three Muskequeers;"

(8) Hornbuckle told him that he was "pretty;"

(9) Hornbuckle told him that he would like to bend him over a chair and have sex with him;

(10) Hornbuckle wrapped a piece of computer paper around his head and fashioned it as a scarf;

(11) Hornbuckle threatened him that he would run him off the property if he did not "go along with him and his boys." He was referring to himself, Thomasson, and Summerlin;

(12) Thomasson grabbed at him on several occasions;

(13) Thomasson put him in a headlock on occasion;

(14) Thomasson tried to kiss him;

(15) Thomasson pinched him on occasion;

(16) Thomasson told him that he was "cute;"

(17) Thomasson stated that his girlfriend was ugly;

(18) Thomasson bent him over while Hornbuckle attempted to stick a broom handle into his anus. All three persons were fully clothed;

(19) Summerlin grabbed at him on several occasions;

(21) Summerlin asked him where he was getting his [sex] now; and

(22) Summerlin pulled his pants down in front of him, exposing a tattoo on his buttocks;

It is undisputed that Hornbuckle and Thomasson actually touched the plaintiff; Summerlin claims that he only grabbed at Martin and did not touch him. It is also undisputed that all three defendants made offensive comments to the plaintiff. Martin admits none of the defendants propositioned him to have sex with them. There is also no evidence that Martin or any of the individual defendants are homosexual.

Martin testified that during the course of the harassment he spoke with Hornbuckle on a number of occasions about stopping the harassment to no avail. He also testified that on four or five occasions he spoke with Mr. Benson, who was second in authority to the Master Mechanic, about bringing the harassment to an end. He also requested help from Mr. Loughner, the second shift supervisor. However, neither Benson nor Loughner made any effort to stop the offensive conduct. Martin did not contact the company's Equal Employment Opportunity Department or notify the Master Mechanic. He also did not attempt to utilize the company's sexual harassment policy. Norfolk Southern alleges the plaintiff received specific training and literature regarding the harassment policy; Martin claims he was merely aware of the existence of the policy, not the specifics.

On April 4, 1994, Norfolk Southern received a copy of the charge of discrimination the plaintiff filed with the Equal Employment Opportunity Commission ("EEOC"). On April 7, 1994, S.B. Stutsman, manager of Norfolk Southern's Equal Employment Opportunity Department, came to Birmingham and interviewed Martin, Hornbuckle, Summerlin, Thomasson, and various other persons in the Mechanical Department at Norris Yard concerning Martin's allegations. Stutsman was assisted by Bennett, the Master Mechanic of the diesel department at Norris Yard. As a result of the initial investigation, Norfolk Southern suspended Hornbuckle, Thomasson and Summerlin from their employment on the grounds of conduct unbecoming an employee. After a formal hearing, Hearing Officer L.C. Smith upheld each of the charges leveled against them and all three were terminated.

Martin also claims that Norfolk Southern mishandled his EEOC charge. The EEOC erroneously sent the charge to the Transportation Department, rather than the Mechanical Department, where it was allowed to be opened and read. Martin testified that because his complaint became public knowledge, he experienced hostility from other Norfolk Southern employees on the third shift at the diesel shop at Norris Yard. Due

to this hostility, he was allowed to begin working the first shift. Martin then chose to take a medical leave of absence. During his medical leave, he and his new wife moved back to South Carolina. Norfolk Southern informed Martin that upon the expiration of his six month leave period, he was to report to work in Birmingham if he had not been placed on long term disability. When his leave expired, he chose not to return to work and was discharged in accord with company policy.

## III. Discussion.

### A. The Title VII Claims.

All the defendants move for summary judgment on the sexual harassment claim under Title VII.[1]

■■■ Title VII of the Civil Rights Act of 1994, provides in pertinent part:

> It shall be unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's ... sex.

42 U.S.C. § 2000e–2(a)(1). Under the plain language of the statute, employment discrimination based on gender is prohibited. *See Hopkins v. Baltimore Gas & Electric Co.*, 871 F.Supp. 822, 833 n. 17 (D.Md.1994) ("Courts have recognized that the word 'sex' as used in Title VII means, in effect, 'gender.' "). This principle applies equally to both men and women. Furthermore, the statute contains no words of limitation requiring the employer to be of the opposite gender of the employee; thus, arguably, same-sex gender discrimination is covered by Title VII. *See Tietgen v. Brown's Westminster Motors, Inc.*, 921 F.Supp. 1495 (E.D.Va., Alexandra Division 1996) ("Conspicuously, the statute does not mention the employer's

gender. It follows, therefore, that the ... statute prohibits all employment discrimination based on an employee's sex or gender, whatever employer and employee gender combination may be involved.... So same-gender discrimination ... is within the statute's reach provided the discrimination occurs because of the employee's gender.").

In the case at bar, Martin, a male, claims the defendants, also males, subjected him to a hostile working environment based on sex in violation of Title VII. Because gender discrimination is prohibited regardless of the employer/employee combination, it would seem that same-sex hostile working environment discrimination would be actionable under the statute. However, hostile working environment sexual harassment is different from sex discrimination cases predicated upon disparate treatment in that it is not specifically mentioned in the language of the statute, but is a product of judicial interpretation. In *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court recognized for the first time that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive working environment." *Meritor*, 477 U.S. at 66, 106 S.Ct. at 2405. The Court reaffirmed its holding in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), and prescribed a two-part, objective/subjective test to assess the hostility of the alleged abusive conduct.[2] *Id.*, at 20, at 370. However, neither *Harris* nor *Meritor* discussed in any significant detail the doctrinal basis for classifying sexual harassment as sex discrimination. *See Meritor*, 477 U.S. at 57, 106 S.Ct. 2399; *Harris*, 510 U.S. at 17, 114 S.Ct. at 367; *Hopkins v. Baltimore Gas & Elec. Co.*, 871 F.Supp. 822 (D.Ma.1994). In *Meritor*, "the Court merely stated that, 'without question, when a supervisor sexually harasses a subordinate because

---

1. The plaintiff concedes that his Title VII claims against the individual defendants are due to be dismissed. *Opponent's Responsive Submission in Response to Exhibit "D" of the Court's Order*, at 20 n. 20; *See also Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991) (holding that individual employees are not liable under Title VII).

Thus, the Title VII claims against the individual defendants are also due to be dismissed on this ground.

2. The court also held that psychological harm to the plaintiff is not a required element in a hostile

of the subordinate's sex, that supervisor discriminate[s] on the basis of sex.' " *Hopkins,* 871 F.Supp. at 832, citing *Meritor,* 477 U.S. at 64, 106 S.Ct. at 2404 (internal citations omitted). However, the Supreme Court made it clear that not all harassment is actionable under Title VII. *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405 ("not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII.").

Several courts have held that sexual harassment is actionable under Title VII as sex discrimination due to

"the exploitation of a powerful position to impose sexual demands or pressures on an unwilling but less powerful person. Actionable sexual-harassment fosters a sense of degradation in the victim by attacking their [sic] sexuality. In effect, the offender is saying by words or actions that the victim is inferior because of the victim's sex."

*Goluszek v. Smith,* 697 F.Supp. 1452, 1456 (N.D.Ill.1988). *See also Garcia v. Elf Atochem North America,* 28 F.3d 446 (5th Cir. 1994) (relying on *Goluszek* in summarily holding that "harassment by a male does not state a claim under Title VII even though the harassment has sexual overtones"); *Hopkins,* 871 F.Supp. at 832–35; *Benekritis v. Johnson,* 882 F.Supp. 521, 525–26 (D.S.C. 1995); *Quick v. Donaldson Co., Inc.,* 895 F.Supp. 1288, 1293–97 (S.D.Iowa 1995). This theory focuses on whether there is an atmosphere of oppression by a 'dominant gender,' and thus assumes that the harasser and victim must be of opposing genders. *See Hopkins,* 871 F.Supp. at 834. For this reason, the courts that have adopted this rationale have held that same-sex hostile working environment sexual harassment is not actionable under Title VII.[3]

There is another, more fundamental reason that hostile working environment sexual harassment is actionable as sex discrimination—the cause of the harassment. *See Henson v. City of Dundee,* 682 F.2d 897, 903–04 (11th Cir.1982) (The essence of a disparate treatment claim under Title VII is that an

employee is intentionally singled out for adverse treatment on the basis of a prohibited criterion. Therefore, to prove a claim for hostile working environment due to sexual harassment, the plaintiff must show that but for the fact of her sex, she would not have been the object of harassment.). In a situation where a male sexually harasses a female, there is the presumption that he does so *because* she is a female and that he would not do the same to a male. The same is true when a homosexual or bisexual male harasses another male, there is the presumption that the harasser does so because he is sexually attracted to the male victim and would not treat a female in the same manner. The presumption arises from the sexually oriented harassing conduct and is predicated upon the perceived need for sexual gratification. Because of the demand by the harasser for sexual gratification, the victim is singled out because of his or her gender. Thus, there is discrimination based upon the victim's sex in violation of Title VII.

However, in the case of same-sex heterosexual hostile working environment sexual harassment, the presumption of sexual gratification and thus, sex discrimination, ceases to exist. *See Tietgen,* 921 F.Supp. at 1501. One may argue that evidence that a male harasser does not subject females to the same kind of offensive conduct as the male victim is sufficient to show that gender is the reason for the harassment. However, without the presumption of sexual gratification, there is no evidence that the harasser intentionally singled out the victim for offensive treatment because he was male. Thus, there is no sex discrimination.

■ In general, the facts of a same-sex heterosexual hostile environment case do not provide any assurance that the alleged conduct occurred because of the employee's gender. *See Tietgen,* 921 F.Supp. at 1501. "In fact, the allegedly harassing conduct is often capable of being construed … as mere locker room antics, joking, or horseplay," *Tietgen,* 921 F.Supp. at 1501, which by its very nature is not discriminatory. Actionable hostile environment sexual harassment requires

environment claim. *Harris,* 510 U.S. at 20–22, 114 S.Ct. at 370–71.

3. These courts also rely on the intent of Congress in enacting Title VII.

discrimination—harassment *because* of the employee's sex. *See Meritor,* 477 U.S. at 62, 106 S.Ct. at 2403; *Henson,* 682 F.2d at 903–04. To simply make all harassment with sexual overtones actionable without the existence of discrimination would be to read the word discrimination out of the statute. Therefore, the court holds that same-sex heterosexual hostile working environment sexual harassment is not actionable under Title VII.[4] *See also McWilliams v. Fairfax County Bd. of Supervisors,* 72 F.3d 1191, 1195–96 (4th Cir.1996) (Holding same-sex hostile working environment sexual harassment not actionable under Title VII due to, inter alia, causation.). Accordingly, the plaintiff's Title VII claims are due to be dismissed.

 Alternatively, if same-sex heterosexual hostile environment sexual harassment is actionable under Title VII, the plaintiff's claims are still due to be dismissed for failure to establish a prima facie case. To establish a hostile work environment sexual harassment claim, the plaintiff must allege and prove:

(1) the employee belongs to a protected group;

(2) the employee was subject to unwelcome sexual harassment;

(3) the harassment was based upon the employee's sex.

(4) the harassment complained of affected a "term, condition, or privilege" of employment; and

(5) respondeat superior.

*See Henson,* 682 F.2d at 901. Examination of the evidence shows that the plaintiff has presented no evidence to create a material question of fact as to whether the harassment was 'based on the employee's sex.' In fact, the plaintiff admits to not knowing why the defendants subjected him to such offensive treatment. There is also no evidence that either the plaintiff or any of the alleged harassers are homosexual. Accordingly, the plaintiff has not established a prima facie case of hostile environment sexual harass-

ment and the Title VII claims are due to be dismissed.

## IV. The FELA Claims.

 The Federal Employers' Liability Act, ("FELA"), "provides that an employer shall be liable for damages ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees ... of the carrier." *Boeing Co. v. Shipman,* 411 F.2d 365, 370 (5th Cir.1969), citing 45 U.S.C. § 51. FELA was enacted in 1908 to "put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operations." *Id.* at 371. It is clear that the congressional intent in enacting the statute was "to secure jury determinations in a larger proportion of cases than would be true of ordinary common law actions." *Id.* As such, under FELA, the right of the jury to pass upon the question of fault and causality is more liberally viewed. *Id.* Thus, "[a] plaintiff can get to a jury with even slight evidence of negligence." *Lancaster v. Norfolk and W. Ry.,* 773 F.2d 807, 820 (7th Cir.1985). In fact, courts have defined the standard for raising a jury question as "not outside the possibility of reason." *Mullahon v. Union Pac. R.R.,* 64 F.3d 1358, 1364 (9th Cir.1994).

 There are two theories of liability under FELA: respondeat superior and direct liability.

Under the theory of respondeat superior, an employer is liable for the intentional actions committed by its employee in furtherance of the employer's business. Under the theory of direct negligence, an employer is liable if it fails to prevent reasonably foreseeable danger to an employee from intentional or criminal misconduct.

*Mullahon,* 64 F.3d at 1362. The plaintiff claims Norfolk Southern is liable under both theories.

 In support of his claim that Norfolk Southern is liable under the theory of respondeat superior, the plaintiff argues that Hornbuckle's and Summerlin's harassment

---

4. The court's holding is limited to claims of same-sex hostile working environment cases. It does not address claims involving same-sex quid pro quo sexual harassment which, presumably, would always involve homosexual or bisexual persons.

was committed in furtherance of their responsibility as supervisors; namely to further employee morale. He offers testimony of both defendants to support this contention. Hornbuckle testified that he did not think his conduct should be classified as horseplay, but merely as "just getting along." Likewise, Summerlin, when asked to put himself in the position of a new employee stated he "would ask for an explanation and ... would know the reasons behind the ... horseplay ... and if that was part of [the] job, [he] would adapt." While this testimony may illustrate the defendants attitude toward their conduct, it does not support the contention that their actions were done in furtherance of their employer's objectives. In fact, the plaintiff testified in his deposition that he thought their conduct was a detraction from their assigned work. "[W]hen the motive for the employee's intentional tort is personal— which is to say unrelated to his employer's objectives and therefore not in furtherance of those objectives—the employer is not liable under a theory of respondeat superior." *Lancaster*, 773 F.2d at 819–20. Several courts have held that similar conduct is not in furtherance of the employer's objectives. *See Lancaster*, 773 F.2d at 819–20 (The court held that a supervisor's 'goosing' of the plaintiff was the "pure expression of perversion, infantilism, bad taste, or some combination of these things," and was not in furtherance of the employer's objectives.); *Hoyt v. Thompson*, 174 F.2d 284 (7th Cir.1949) (Wrestling and scuffling not in furtherance of the railway's business.); *Lavender v. Illinois Cent. Ry.*, 358 Mo. 1160, 219 S.W.2d 353 (1949) ("When, of their own volition, to serve their own playful purposes, and not of any necessity arising from their work, railroad employees so step aside and out of the line of their duty as to engage in horseplay with loaded pistols they thereby suspend the relationship of employer and employees."). Based on the foregoing, the court finds the offensive conduct of the individual defendants was not in furtherance of Norfolk Southern's objectives. Accordingly, the plaintiff may not proceed under the respondeat superior theory.

▆▆▆▆ The plaintiff also contends that Norfolk Southern is liable under the theory of direct liability. Under FELA, an employer may be directly liable for negligent hiring, supervising or failing to fire an incompetent employee. *Lancaster*, 773 F.2d at 818. To prove the railroad's negligence, the plaintiff must show Norfolk Southern had knowledge of the employees' propensities and failed to act on the information. *Id.* at 819. There is no need to show activities in furtherance of the employer's business. *Id.* at 818. The plaintiff has offered evidence that he informed a co-employee, Mr. Benson, of the harassment. In *Mullahon v. Union Pacific Railroad*, the Ninth Circuit concluded that knowledge is imputed to the railroad when an employee who was aware of the misconduct and who, by virtue of his duties or responsibilities, was in a position to take steps against the misconduct but failed to do so. *Mullahon*, 64 F.3d at 1363–64. Martin claims that Benson was second in command under the Master Mechanic. Under the liberal FELA standard, "it is not outside the possibility of reason" that he could have ended the offensive conduct. There is also evidence that another fellow employee, Mr. Loughner, was aware of the harassment. Again, under the liberal evidentiary standard, it is entirely possible that he too could have done something to stop the misconduct. Furthermore, it is undisputed that the Master Mechanic, Bennett, told the plaintiff that Hornbuckle was a 'strange, weird, sick individual' and that he would have to learn to work with him. This is sufficient evidence from which the jury could infer that the Master Mechanic was aware of Hornbuckle's propensities to harass. Additionally, under the rationale of *Lancaster*, a jury could infer from the pervasiveness of the harassment that the Master Mechanic should have been aware of the activity and taken action to stop it. *Lancaster*, 773 F.2d at 820. Therefore, Norfolk Southern's motion for summary judgment as to direct liability under FELA will be denied.

## V. State Law Claims.

### A. Norfolk Southern.

The plaintiff also asserts various state law claims against Norfolk Southern. However, in his responsive submission, Martin con-

cedes that the weight of authority supports the railroad's position that FELA provides the exclusive remedy for claims falling within its scope and preempts state law. *Opponent's Responsive Submission in Response to Exhibit "D" of the Court's Order,* at 20 n. 20; *Janelle v. Seaboard Coast Line R. Co.,* 524 F.2d 1259 (5th Cir.1975). Accordingly, Norfolk Southern's motion for summary judgment as to the state law claims is due to be granted.

## B. Tort of Outrage.

The plaintiff claims that the actions of defendants Hornbuckle, Thomasson, and Summerlin constitute outrage. The tort of outrage was first defined by the Alabama Supreme Court in *American Road Service v. Inmon,* 394 So.2d 361, 365 (Ala.1980). The court stated, "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress." *Id.* at 365. The court emphasized that the tort was reserved for "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* Because the cause of action is available only in the most egregious circumstances, very few cases present a question for the jury. *Thomas v. BSE Industrial Contractors, Inc.,* 624 So.2d 1041, 1044 (Ala.1993). However, the court is not prepared to hold as a matter of law that the alleged conduct in this case does not constitute conduct "utterly intolerable in a civilized society"; thus, the determination will be left for the jury.[5] Accordingly, summary judgment as to the outrage claim against the individual defendants will be denied.

## C. Invasion of Privacy.

Alabama recognizes the tort of invasion of privacy, having adopted what is essentially the Restatement (Second) of Torts § 652B. That section provides in pertinent part, "one who intentionally intrudes physically or otherwise upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person." *See Phillips v. Smalley Maintenance Services,* 435 So.2d 705 (Ala.1983). An intrusion is highly offensive to a reasonable person if it is of such a nature as "to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Norris v. Moskin Stores, Inc.,* 272 Ala. 174, 132 So.2d 321, 323 (1961). The plaintiff contends Thomasson, Hornbuckle, and Summerlin wrongfully invaded his physical solitude or seclusion by touching him in a sexual manner and making offensive comments. Based on the evidence, a reasonable jury could find the conduct complained of could have caused the plaintiff to experience mental suffering, shame or humiliation. Accordingly, summary judgment will be denied as to the invasion of privacy claims against the individual defendants.

## D. Assault and Battery.

In Alabama, assault and battery is "[a]ny touching by one person of the person of another in rudeness or anger." *Whitlow v. Bruno's, Inc.,* 567 So.2d 1235, 1239 (Ala.1990), citing, *Seigel v. Long,* 169 Ala. 79, 53 So. 753, 754 (1910). Defendant Summerlin is the only defendant to move for summary judgment on this claim. The plaintiff has presented evidence that Summerlin touched him in an offensive manner. Summerlin claims that he did not touch the plaintiff, but only grabbed at him. Credibility determinations, such as this, are reserved for the jury. Accordingly, summary judgment will be denied.

## VI. Conclusion.

The defendant's motion for summary judgment with regard to the Title VII claims will

---

**5.** While the court has found that the alleged conduct of these individual defendants is not cognizable under Title VII, that is not to say that it cannot, or should not, be reached under other theories of liability. No person should be expect- ed to endure without possibility of redress the sort of mean spirited and juvenile misconduct to which the plaintiff was allegedly subjected at the hands of these defendants. Here, the plaintiff may pursue relief through his state law claims.

be granted. Norfolk Southern's motion with regard to the FELA claims will be denied as will the individual defendants' motion as to the state law claims. A separate judgment will be entered.

## ORDER

In accord with the memorandum of opinion entered contemporaneously herewith, it is hereby **ORDERED, ADJUDGED,** and **DECREED:**

1. All Title VII claims against Norfolk Southern Railway Company, Preston Lee Thomasson, Robert F. Summerlin, and Larry D. Hornbuckle are **DISMISSED** with prejudice;

2. All state law claims against Norfolk Southern Railway Company are **DISMISSED** with prejudice;

3. Norfolk Southern Railway Company's motion for summary judgment with regard to the FELA claims is **DENIED;**

4. Preston Lee Thomasson's motion for summary judgment as to the claims of outrage and invasion of privacy is **DENIED;**

5. Robert F. Summerlin's motion for summary judgment as to the claims of outrage, invasion of privacy, and assault and battery is **DENIED;** and

6. Larry D. Hornbuckle's motion for summary judgment as to the claims of outrage and invasion of privacy is **DENIED.**