504 S.E.2d 648

**Susan WILLIS, et al., Plaintiffs,**

**v.**

**WAL–MART STORES, INC., et al., Defendants.**

**No. 24152.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 1998.

Decided June 24, 1998.

Sharon F. Iskra, Hunt & Lees, Charleston, for Plaintiffs.

Mary K. Buchmelter, Deputy Attorney General, Charleston, for West Virginia Human Rights Commission.

Roger A. Wolfe, Kelly L. Mount, Jackson & Kelly, Charleston, for Wal–Mart Stores, Inc.

Gene W. Bailey, II, Charleston, for James Bragg.

WORKMAN, Justice:

Through certified question, this Court is presented with a case of first impression concerning whether the West Virginia Human Rights Act ("Act"), West Virginia Code § 5–11–1 to –19 (1994 & Supp.1997), recognizes a cause of action for a claim of same-gender sexual harassment. The United States Supreme Court recently ruled that same-sex harassment is actionable under Title VII,[1] and we determine similarly that same-gender[2] sexual harassment is a recog-

1. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

2. The Fourth Circuit noted in *Hopkins v. Baltimore Gas and Electric Co.*, 77 F.3d 745 (4th Cir.1996),

> Because Congress intended that the term "sex" in Title VII mean simply "man" or "woman," there is no need to distinguish between the terms "sex" and "gender" in Title VII cases. Consequently, courts, speaking in the context of Title VII, have used the term "sex" and "gender" interchangeably to refer simply to the fact that an employee is male or female. *See, e.g., Price Waterhouse v. Hopkins*, 490 U.S. 228, 239–41, 109 S.Ct. 1775, 1784–

nized cause of action under the provisions of our Act.

Alleging unlawful discrimination predicated on sexual harassment,[3] Plaintiffs Susan Willis[4] and Christopher Lack filed a civil action on April 8, 1996, in the Circuit Court of Raleigh County against Defendant Wal–Mart Stores, Inc. ("Wal–Mart") and James Bragg, their supervisor. Based on diversity of citizenship, Wal–Mart removed the case to federal court. Contending that a same-gender sexual harassment is not a recognized claim under the Act,[5] Wal–Mart filed a motion for summary judgment. By order dated June 5, 1997, Judge Haden certified the following question to this Court: "Does the WVHRA recognize a claim of same-gender sexual harassment and, if so, what are the elements of the claim?"

Since the question posed by the district court is entirely legal in nature, we see little need to delve deeply into the factual allegations of this case. *See infra* note 9. Briefly, however, Plaintiff Lack was employed by Wal–Mart at its Beckley, West Virginia, store from approximately April 1992 until February 1996.[6] During the time period at issue—October 1994 through April 1995, Lack alleges that Bragg made offensive jokes, remarks, and gestures to him or in his presence.[7] As a result of the internal complaint of sexual harassment filed by Plaintiff Willis, Wal–Mart investigated Bragg's conduct and terminated him from their employ in April 1995, after determining that Bragg had engaged in conduct that some female employees found offensive.

The United States Supreme Court addressed the actionability of a same-sex sexual harassment claim in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). At issue in *Oncale* was whether Title VII's language which prohibits discrimination "because of sex"[8] bars a claim of discrimination where both the victim and the harasser are of the same sex.[9] Writing for the high court, Jus-

86, 104 L.Ed.2d 268 (1989) (using "gender" and "sex" interchangeably).

77 F.3d at 749 n. 1; *accord Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir.1996).

3. In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the United States Supreme Court held that sexual harassment is an actionable form of sex discrimination.

4. Ms. Willis' case has been resolved through mediation.

5. As an additional basis for their motion, Wal–Mart cited Plaintiff Lack's failure to introduce evidence that Supervisor Bragg was homosexual, relying on Fourth Circuit precedent. *See Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d 138 (4th Cir.1996) (restating rule recognized in *McWilliams v. Fairfax County Board of Supervisors*, 72 F.3d 1191 (1996), that same-sex sexual harassment is actionable under Title VII if the perpetrator is homosexual).

6. Plaintiff Lack resigned from Wal-mart in February 1996.

7. Examples of the alleged offensive behavior include a statement alleged to have been made by Bragg while grabbing his crotch at a department Christmas party in December 1994 that "This is your Christmas present." Sometime between January and March 1995 at a time when Lack indicated that he was no longer working, Bragg stated, "Good, I'm off the clock, too," and motioned as if he was going to unzip his pants while saying "Come here." When Lack called Bragg to the service desk, Bragg reportedly would often say, "I'm coming. I'm coming, Chrissy. I'm coming for you." On two particular occasions, Lack concluded that Bragg was making homosexual advances toward him, when Bragg grabbed his own crotch and then motioned as if he was going to unzip his pants.

In addition to the evidence that Lack cites as suggestive of Bragg's arguably homosexual interest in Lack, additional examples of offensive behavior cited suggest that Bragg also expressed a sexual interest in women. According to Lack, Bragg would say "Oh, my rod," when he saw an attractive woman walking down the aisle.

8. Title VII of the Civil Rights Act of 1964 provides in pertinent part:

> It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1) (1994).

9. Limited discussion of the facts underlying Oncale's discrimination complaint are provided in the Supreme Court's opinion as the "precise details are irrelevant to the legal point we must decide, and in the interest of both brevity and dignity we shall describe them only generally." 523 U.S. at ——, 118 S.Ct. at 1000. Employed as a roustabout on an eight-man oil platform in the Gulf of Mexico, Oncale was "forcibly subjected to sex-related, humiliating actions" by three of

tice Scalia began by noting that "Title VII's prohibition of discrimination 'because of ... sex' protects men as well as women...." 523 U.S. at ——, 118 S.Ct. at 1001 (quoting *Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983)). Observing that state and federal courts "have taken a bewildering variety of stances" on this issue,[10] the Court in *Oncale* concluded that same-sex sexual harassment comes within the protection of Title VII. 523 U.S. at ——, 118 S.Ct. at 1001–02. The Supreme Court explained:

> If our precedents leave any doubt on the question, we hold today that nothing in Title VII necessarily bars a claim of discrimination "because of ... sex" merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex.
>
> ....
>
> We see no justification in the statutory language or our precedents for a categorical rule excluding same-sex harassment claims from the coverage of Title VII. As some courts have observed, male-on-male sexual harassment in the workplace was assuredly not the principal evil Congress was concerned with when it enacted Title VII. But statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed. Title VII prohibits "discriminat[ion] ... because of ... sex" in the "terms" or "conditions" of employment. Our holding that this includes sexual harassment must extend to sexual harassment of any kind that meets the statutory requirements.

523 U.S. at ——, 118 S.Ct. at 1001–02.

Justice Scalia rejected outright the argument that recognizing same-sex harassment would "transform Title VII into a general civility code for the American workplace." 523 U.S. at ——, 118 S.Ct. at 1002. He explained that the risk of such an outcome

> is no greater for same-sex than for opposite-sex harassment, and is adequately met by careful attention to the requirements of the statute. Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "*discriminat[ion]* ... because of ... sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris[v. Forklift Systems, Inc.,* 510 U.S. 17,] 25 [1993], 114 S.Ct. [367], 372 [126 L.Ed.2d 295] (Ginsburg, J., concurring).

523 U.S. at ——, 118 S.Ct. at 1002.

Emphasizing that the *Oncale* decision was not aimed at eradicating the routine office banter that occurs among members of either the opposite sex or the same sex, Justice Scalia elucidated that

> [t]he prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory "conditions of employment."

the crew members. Two of the crew members physically assaulted Oncale in a sexual manner and the third member threatened him with rape. *Id.* at ————, 118 S.Ct. at 1000–1001.

10. Among those federal courts noted for a "bewildering stance" was the Fourth Circuit Court of Appeal's position, as stated in *McWilliams,* 72 F.3d 1191, and *Wrightson,* 99 F.3d 138, that provides for a same-sex harassment claim "only if the plaintiff can prove that the harasser is homosexual (and thus presumably motivated by sexual desire)." *Oncale,* 523 U.S. at ——, 118 S.Ct. at 1002.

*Oncale,* 523 U.S. at ——, 118 S.Ct. at 1003 (quoting *Harris,* 510 U.S. at 21, 114 S.Ct. 367); *see Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995) (stating that Title VII does not attempt "to purge the workplace of vulgarity"); *see also Quick v. Donaldson Co.,* 895 F.Supp. 1288, 1296 (S.D.Iowa 1995), *judgment reversed on other grounds,* 90 F.3d 1372 (8th Cir.1996) (observing that while "[u]nder Title VII, employers have an affirmative duty to maintain a working 'environment free of discriminatory intimidation, ridicule, and insult[,]'" they do not have a corresponding affirmative duty "to maintain a working environment free of all non-discriminatory juvenile mischief and immature behavior") (quoting *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)).

■ In our recent opinion in *West Virginia Human Rights Commission v. Wilson Estates,* 202 W. Va. 152, 503 S.E.2d 6 (1998), we observed that "[t]his Court has consistently looked to federal discrimination law dealing with Title VII of the Civil Rights Act of 1964 when interpreting provisions of our state's human rights statutes." 202 W. Va. at 158, 503 S.E.2d at 12 (citation omitted). Our "longstanding practice of applying the same analytical framework used by the federal courts when deciding cases arising under the Act" is particularly fitting when, as in this case, the critical language of our Act—"because of sex"—parallels the federal legislation. 202 W. Va. at 158, 503 S.E.2d at 12; *see* W. Va.Code § 5–11–9, 5–11–3(h); 42 U.S.C. § 2000e–2(a)(1). Given the patent applicability of both the holding and reasoning articulated in *Oncale,* we conclude that discrimination based upon same-gender sexual harassment is a recognized cause of action under the Act. *See* W. Va.Code § 5–11–9.

■ Raised as an ancillary part of the certified question is the issue of the elements of a same-sex sexual harassment claim. In syllabus point 5 of *Hanlon v. Chambers,* 195 W.Va. 99, 464 S.E.2d 741 (1995), we identified the elements of a sexual harassment claim:

> "To establish a claim for sexual harassment under the West Virginia Human Rights Act, W. Va.Code, 5–11–1, *et seq.,* based upon a hostile or abusive work environment, a plaintiff-employee must prove that (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer."

Relying on the Fourth Circuit's pre-*Oncale* approach to claims involving same-sex sexual harassment, Wal–Mart argued that a violation of the Act can only be established if Plaintiffs can prove that Mr. Bragg is a homosexual. *See Wrightson v. Pizza Hut of America, Inc.,* 99 F.3d 138, 144 (4th Cir.1996) (holding that same-sex sexual harassment is actionable provided that perpetrator is homosexual); *Hopkins v. Baltimore Gas and Elec. Co.,* 77 F.3d 745, 753 (4th Cir.1996) (affirming lower court's granting of summary judgment to employer because plaintiff had failed to prove that conduct at issue was sufficiently severe or pervasive, but noting that claim of same-gender sexual harassment could be actionable if basis for harassment was employee's gender); *McWilliams v. Fairfax County Bd. of Supervisors,* 72 F.3d 1191, 1195 and n. 5 (4th Cir.1996) (holding that heterosexual male could not prove sexual harassment where alleged harasser was heterosexual, but suggesting that proof of homosexuality should be required if Title VII is interpreted to include same-sex harassment claims).

■ The issue of whether a same-sex sexual harassment claim requires evidence of the perpetrator's homosexuality was put to rest by the *Oncale* decision. Explaining that "'[t]he critical issue'" in sexual harassment claims "'is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed[,]'" *Harris,* 510 U.S. at 25, 114 S.Ct. 367 (Ginsburg, J., concurring), the Court elaborated regarding the issue of proof in a sexual harassment case:

> Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of

sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex. The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. *But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex.*

*Oncale,* 523 U.S. at ——, 118 S.Ct. at 1002 (emphasis supplied). Explaining further, the Court observed:

> A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "*discrimina[tion]* ... because of sex."

*Id.* at ——, 118 S.Ct. at 1002. Under the rationale of *Oncale,* we determine that the elements for a same-gender sexual harassment claim remain the same as those pronounced by this Court in syllabus point five of *Hanlon. See* 195 W.Va. at 103, 464 S.E.2d at 745.

The court in *Tietgen v. Brown's Westminster Motors, Inc.,* 921 F.Supp. 1495 (E.D.Va. 1996), aptly observed that "[i]n same-sex harassment cases ... causation is much less evident [than opposite sex cases] and may be difficult to prove." *Id.* at 1501. In explanation, the court commented that

> causation is less evident in same-sex sexual harassment cases than in those involving individuals of opposite gender because, simply stated, society as a whole has more experience with heterosexual relationships and heterosexual interaction.... This is so because the allegedly harassing conduct is often capable of being construed not only as actionable harassment, but also, and perhaps more familiarly, as mere locker room antics, joking, or horseplay.

*Id.*

Despite this admitted causation obstacle inherent to same-sex sexual harassment cases, "the plaintiff must ultimately prove the causation element as part of his Title VII prima facie case. If he cannot offer evidence tending to prove that he was harassed because of his sex, as opposed to some other reason, his claim fails." *Tietgen,* 921 F.Supp. at 1501. When proof of a sexual harasser's homosexuality is available and is credible, as the Court stressed in *Oncale,* such evidence is relevant to the issue of a same-sex sexual harassment claim. 523 U.S. at ——, 118 S.Ct. at 1002. Lack of such evidence, however, does not render a plaintiff unable to prove a prima facie case of sexual harassment. It just makes his/her case more difficult to prove.

Anticipating the very concerns that Justice Scalia would spurn in *Oncale* with regard to the naysayers' prediction that permitting same-sex sexual harassment cases will barrage the judicial system with a flood of civil actions involving instances of workplace horseplay and crude discourse, the court in *Doe by Doe v. City of Belleville,* 119 F.3d 563 (7th Cir.1997), judgment vacated and case remanded in view of *Oncale,* 523 U.S. ——, 118 S.Ct. 1183, 140 L.Ed.2d 313 (1998), observed that "very similar concerns were expressed when courts rejected the first claims of sexual harassment brought by women in the 1970s." 119 F.3d at 591 (1997). And, as the Seventh Circuit observes

> Here we are, twenty years later, and the sky has not fallen. We are not, it turns out, incapable of distinguishing between the occasional off-color joke, stray remark, or rebuffed proposition, and a work environment that is rendered hostile by severe or pervasive harassment. We are well practiced in examining sexual harassment from the objective viewpoint of the reasonable individual as well as the subjective view of the plaintiff. When a man complains that he has been sexually harassed by another man, then, we know how to distinguish between harassment and "horseplay" '; we have been making that

very distinction for years in the cases that female plaintiffs have brought.

*Id.*

The real aim of harassment litigation, as explained in *Doe,* are those situations when

> an employee is made the unwilling target of repeated, sexually-charged and gender-based remarks, when he is threatened with sexual assault, and when he is subjected to unwelcome sexual contact. Common sense enables us to distinguish between occasional, undirected vulgarity that would not tend to make the workplace particularly hostile to any man or woman and a campaign of harassment that highlights an individual's gender, uses his gender to embarrass and intimidate him, and renders the work environment hostile to him because he is a man.

119 F.3d at 591–92. Notwithstanding the wide-spread adoption of anti-discrimination measures and increased appreciation of their societal value, the courts cannot remove all vestiges of offensive behavior from the workplace:

> Ideally, every workplace would be free of insult, ridicule, and personal animosity, and all workers would be treated with respect, courtesy, and decency. Such a world, if it is ever to exist, cannot be manufactured by courts. Title VII does not purport to dictate the exact manner or behavior employers must exhibit toward employees. It simply provides a level playing field for groups that traditionally were disadvantaged.

*Quick,* 895 F.Supp. at 1297.

Having answered the certified questions, this case is dismissed from the docket of this Court.

Certified questions answered; case dismissed.