**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHRISTOPHER LACK,
                    *Plaintiff-Appellee,*

            and

SUSAN WILLIS,
                        *Plaintiff,*

            v.

WAL-MART STORES, INCORPORATED, a
company licensed to do business in
West Virginia,
            *Defendant-Appellant,*

            and

JAMES BRAGG,
                    *Defendant.*

No. 99-2089

CHRISTOPHER LACK,
                    *Plaintiff-Appellee,*

                and

SUSAN WILLIS,
                            *Plaintiff,*

                v.

JAMES BRAGG,                                    No. 99-2090
                    *Defendant-Appellant,*

                and

WAL-MART STORES, INCORPORATED, a
company licensed to do business in
West Virginia,
                            *Defendant.*

Appeals from the United States District Court
for the Southern District of West Virginia, at Beckley.
Charles H. Haden II, Chief District Judge.
(CA-96-462-5)

Argued: September 27, 2000

Decided: February 13, 2001

Before WILLIAMS and KING, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Reversed and remanded by published opinion. Judge King wrote the
opinion, in which Judge Williams and Senior Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Roger Allen Wolfe, JACKSON & KELLY, P.L.L.C.,
Charleston, West Virginia, for Appellants. Sharon M. Iskra, HUNT &

LEE, L.C., Charleston, West Virginia, for Appellee. **ON BRIEF:** Kelley L. Mount, JACKSON & KELLY, P.L.L.C., Charleston, West Virginia, for Appellant Wal-Mart; Gene W. Bailey, II, MCNEER, HIGHLAND, MCMUNN & VARNER, L.C., Clarksburg, West Virginia, for Appellant Bragg.

## OPINION

KING, Circuit Judge:

This suit was initiated in state court by Christopher Lack against both Wal-Mart, his former employer, and James Bragg, his former Wal-Mart supervisor. It was premised on Bragg's lewd and offensive conduct, which Lack claimed constituted unlawful sexual harassment under the West Virginia Human Rights Act. Following removal to the Southern District of West Virginia, a jury found both Bragg and Wal-Mart (collectively, "the defendants") liable and awarded damages. The defendants unsuccessfully contested the verdict, filing motions for judgment as a matter of law or, in the alternative, for a new trial. Because Lack failed to establish that the offending conduct was based on his gender, we reverse and remand for judgment to be entered in favor of the defendants.

I.

A.

As assistant manager of the Beckley, West Virginia Wal-Mart from August 1994 to April 1995, James Bragg enjoyed supervisory responsibilities over the store's sales associates. Lack, who served as a Wal-Mart sales associate during that period, was under Bragg's direct supervision. In April 1996, Lack and a fellow employee, Susan Willis, brought suit against the defendants, alleging that Bragg's frequent lewd remarks and gestures had created a hostile work environment, in violation of the West Virginia Human Rights Act (the "W. Va. Act"), W. Va. Code §§ 5-11-1 to -20.[1]

---

[1]Willis settled her dispute with the defendants and her claims were subsequently dismissed, leaving Lack as the sole plaintiff.

When Lack initiated this litigation, the viability of same-gender harassment claims under the W. Va. Act had not been established. Following removal to federal court on the basis of diversity of citizenship, that state statutory issue was certified to the Supreme Court of Appeals of West Virginia.[2] Consistent with principles articulated by the Supreme Court of the United States in the context of sexual harassment suits brought under Title VII, the W. Va. Act's federal analogue,[3] the West Virginia court responded, inter alia, that "[d]iscrimination based upon same-gender sexual harassment is a recognized cause of action under the [W. Va. Act]." Syl. Pt. 1, *Willis v. Wal-Mart Stores, Inc.*, 504 S.E.2d 648 (W. Va. 1998).

Lack's suit thereafter proceeded to trial in federal court, and the jury returned a verdict in his favor, awarding $80,000 in damages. Additionally, the district court awarded fees and costs to Lack's counsel. After their motions for judgment as a matter of law or for a new trial were rejected, the defendants appealed. We possess jurisdiction over their appeals under 28 U.S.C. § 1291.

B.

1.

In his complaint, Lack generally alleged that Bragg made "inappropriate and demeaning statements . . . of a sexual nature" and "regularly [told] vulgar jokes in front of plaintiffs and others." J.A. 2. Lack further stated that when he resisted this behavior, expressing his distaste for Bragg's antics, Bragg retaliated against him "by consistently making his work schedule more burdensome and inconvenient."[4] *Id.*

---

[2]Specifically, the district court certified the following question: "Does the [W. Va. Act] recognize a claim of same-gender sexual harassment and, if so, what are the elements of the claim?"

[3]Our reference to Title VII relates to the provisions of that Title in the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), concerning unlawful employment practices.

[4]Lack's complaint simply alleged "unlawful discrimination" by Bragg, individually, and by Wal-Mart, acting through its agents and employees. The complaint made no distinction between various theories of sexual harassment available under the W. Va. Act. Ultimately, however, two theories of sexual harassment emerged — "hostile work environment" and "retaliation" — and were presented to the jury. *See* discussion *infra* at note 5.

Although Wal-Mart was allegedly aware of Bragg's conduct, Lack claimed that it "knowingly allowed such harassment to continue, and ignored the problem" until firing Bragg in April 1995. *Id.*

2.

Because we must view the facts in the light most favorable to Lack, we recite the trial evidence regarding the defendants' misconduct both thoroughly and in that light. *See Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 184 (4th Cir. 2000). Specifically, Lack's evidence, as presented to the jury, included the following:

- Bragg informed Lack that the customer service manager had asked Lack to report to the personnel office. Lack recalls asking Bragg why the manager wanted to see him, and being told, "[Y]ou're probably in trouble for F-ing the cashiers." After this remark, Bragg allegedly "just laughed and walked away." J.A. 70.

- Having just arrived for his shift, Lack went to the cloak-room to clock in. Bragg was walking by and said to Lack, "[C]ome here, Chrissy, I want to talk to you." J.A. 72. When Lack informed him that he was still off the clock, Bragg replied, "[O]h good, I am too" and motioned as if he were going to unzip his pants. *Id.*

- Once, when Lack was assisting a customer, Bragg approached the counter and told him, "I need a small bag, and not the one between your legs, please." J.A. 75.

- When Lack called Bragg over for assistance, e.g., to authorize a refund, Bragg allegedly would say, "I'm coming" or "I'm coming for you" in a "real sexual" tone. J.A. 76.

- Lack recalled that "any time if you saw [Bragg] coming toward you, you could expect something to come out of his mouth sexually." J.A. 72-73. He told jokes "contain[-ing] the word F-ing" every day. J.A. 73.

- Bragg was apparently fond of juvenile wordplay. He made comments about having "penis butter and jelly sandwiches" for lunch, and ended phone conversations with the phrase "spank me very much." *Id.* Similarly, he would exclaim "oh my rod" when he saw an attractive woman. Lack perceived these expressions to be delivered in a "very sexual manner." *Id.*

- Bragg would approach customers standing at the cash register, "mak[ing] it very clear he was checking them out[.]" J.A. 76. According to Lack, if Bragg "liked what he saw, he would stand there and act like he was just going to grab their behind right there." *Id.*

- At the store's Christmas party, Bragg approached Lack while he was standing with some of his co-workers and, grabbing his own crotch, said, "[H]ey, Chris, here is your Christmas present[.]" J.A. 77. Feeling "humiliated," Lack recalled glaring and telling him, "[Y]ou're stupid." *Id.* Bragg allegedly responded, still in front of everybody, "[W]ell, if I'm stupid, you can work on Christmas. And you better be here and I mean it." *Id.*

Following this last exchange, Bragg allegedly altered the posted work schedule so that Lack would be on duty on Christmas Day. Accusing Bragg of retaliation, Lack insisted that his schedule became more onerous in the ensuing months. Lack stated that he was frequently scheduled to stay late at night and return early the next morning, and that he was assigned to work weekends more frequently than before the Christmas incident. According to Lack, such changes were imputable both to Bragg and to Wal-Mart.

Several Wal-Mart employees corroborated Lack's portrayal of Bragg as a supervisor with an unabashed taste for lewd humor. Bragg himself admitted to many of the antics described by Lack, but his account varied in significant respects. Bragg recalled using the expressions "oh, my rod," "squeeze me," and "spank you very much," because he thought they were funny and would garner laughs. He claimed, though, that he didn't perceive "squeeze me" or "spank you very much" as having sexual connotations, testifying that, in any case,

he had never used those expressions in Lack's presence. As to the more individualized physical gestures, Bragg denied the "small bag" incident. He also testified that the crotch-grabbing incident never occurred — indeed, he could not even recall seeing Lack at the Christmas party.

## II.

We review de novo a district court's denial of a Rule 50 motion for judgment as a matter of law. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 404 (4th Cir. 1999). If, viewing the facts in the light most favorable to the non-moving party, there is sufficient evidence for a reasonable jury to have found in Lack's favor, we are constrained to affirm the jury verdict. *See, e.g.*, *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1417 (4th Cir. 1991). While we "are compelled to accord the utmost respect to jury verdicts and tread gingerly in reviewing them," *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1999), we must grant judgment as a matter of law when "there is no legally sufficient evidentiary basis" for the verdict, *see* Fed. R. Civ. P. 50(a)(1).

## III.

## A.

In order to sustain a sexual harassment claim under the W. Va. Act, based upon a hostile or abusive work environment, the evidence of a plaintiff must, viewed in the proper light, prove four elements. The subject conduct must be (1) unwelcome; (2) based on the sex of the plaintiff; (3) sufficiently severe and pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) imputable on some factual basis to the employer. Syl. Pt. 2, *Willis*, 504 S.E.2d at 649 (citing Syl. Pt. 5, *Hanlon v. Chambers*, 464 S.E.2d 741 (W. Va. 1995)).

On appeal, Wal-Mart specifically challenges the sufficiency of Lack's evidence with respect to the second and third elements of his sexual harassment claim.[5] Accordingly, there is no issue raised by

---

[5]In its charge, the district court submitted to the jury two alternative theories of sexual harassment, explaining the contours of sexual harassment claims under the W. Va. Act as follows:

Wal-Mart concerning the unwelcome nature of Bragg's conduct, and Wal-Mart does not deny that such conduct is imputable to it. Though Wal-Mart has acknowledged that it fired Bragg for his "offensive

---

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when either:

(1)    Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment; (HOSTILE ENVIRONMENT THEORY)

or

(2)    Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual. (RETALIATION THEORY)

To establish his claim, Lack must prove the following four (4) elements by a preponderance of the evidence:

*First*:     The assailed conduct was unwelcome;

*Second*:   It was based on Lack's gender;

*Third*:    It was either (1) sufficiently severe or pervasive to alter Lack's conditions of employment and create an abusive work environment; or (2) [Lack's] submission to or rejection of sufficiently severe or pervasive conditions became the basis of an employment decision; and

*Fourth*:   The conduct was imputable on some factual basis to the employer, Wal-Mart, that is, it knew or should have known of Bragg's actions against Plaintiff and the reasonably foreseeable effects of such conduct.

As the district court crisply noted, Lack's "retaliation theory" of sexual harassment generated some confusion among the parties. *See* J.A. 227, n.5 ("The Court took great pains both prior to and during trial to clarify this issue [i.e., the nature of Lack's retaliation claim], with little help from the parties[.]"). The confusion lingers on appeal. Neither the complaint nor the jury charge specifically identifies the statutory basis for Lack's retaliation theory, but the charge tracks the language in Section 2.2.2 of the West Virginia Human Rights Commission's regulations defining sexual harassment. *See* W. Va. C.S.R. § 77-4-2.2. Essentially,

conduct," it insists on appeal that such misconduct was neither gender-based (second element) nor sufficiently severe and pervasive (third element) to sustain the jury's verdict. Because we agree that Lack failed to prove the required second element of his claim, i.e., that the unwelcome conduct was based on Lack's gender, we conclude that Wal-Mart is entitled to judgment as a matter of law.[6]

### B.

As noted, the viability of same-sex harassment claims under the W. Va. Act was unresolved when Lack filed his complaint; the issue was certified to the highest West Virginia court in the context of this suit. Drawing extensively on the parallel Title VII ruling of the Supreme Court in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), the *Willis* court concluded that same-sex harassment claims are cognizable under the W. Va. Act. Like the Supreme Court in *Oncale*, the West Virginia court emphasized the second required element, causation — that is, the requirement that the offending conduct be based on the plaintiff's gender — taking pains to remind that a hostile work environment claim is, at its essence, a sex discrimination claim.

This emphasis on discrimination as sex-differential treatment resonates throughout both *Willis* and *Oncale*. In *Oncale*, the Supreme Court distinguished between harassment that is sexual in content, on the one hand, and harassment that is sexually motivated, on the other:

---

the theory describes quid pro quo harassment, rather than a "true" retaliation claim under West Virginia law. *Cf. Hanlon*, 464 S.E.2d at 753 (describing the elements of a retaliatory discharge claim under W. Va. Code § 5-11-9(7)(C)).

Ultimately, though, it is immaterial whether Lack's theory was labeled as retaliation or quid pro quo harassment. The jury was instructed that, regardless of which theory it adopted, it was incumbent on Lack to prove that the unwelcome conduct was based on Lack's gender.

[6]Since Lack failed to establish that the offending conduct was based on his gender, we need not determine whether it was sufficiently "severe and pervasive" to satisfy the third element of his claim under the W. Va. Act.

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "discriminat[ion] . . . because of . . . sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations.

523 U.S. at 80. As the *Willis* court recognized, the causation element poses an especially formidable obstacle in same-sex harassment cases. Once again, the West Virginia court looked to *Oncale* for guidance as to proof of causation:

> [H]arassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex . . . . Whatever evidentiary route the plaintiff chooses to follow, *he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] . . . because of sex.*"

504 S.E.2d at 653 (quoting *Oncale*, 523 U.S. at 80-81 (emphasis added)).

In denying Wal-Mart's request for judgment as a matter of law, the district court observed, in a footnote, that it found no merit in Wal-Mart's contention that Lack had failed to prove that he was harassed because of his sex. Yet the evidence presented to the jury with respect to this element was remarkably weak. Lack identified several remarks "obviously directed to [him] because he was male" — in particular, Bragg's alleged reference to "F-ing the cashiers" and to the "small bag . . . between [Lack's] legs." While sex-specific, we must conclude that such comments simply do not satisfy the W. Va. Act's causation element.[7]

The causation element must be analyzed in its proper context. Importantly, the W. Va. Act's "based on plaintiff's gender" require-

---

[7]The sexual message conveyed by the cashier comment is ambiguous. Arguably, it reflects a callous and degrading attitude toward the female cashiers, rather than hostility toward Lack on the basis of his gender.

ment — like Title VII's "because of sex" requirement — corresponds to the harasser's hostile and discriminatory conduct. Both *Oncale* and *Willis* clearly instruct that it is not enough that the challenged conduct be sex-specific. Since a hostile work environment claim is fundamentally a sex discrimination claim, a male plaintiff must establish that the harasser discriminated against him, i.e., treated him differently or with greater hostility, because he is a man. The critical issue in this context is "'whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Willis*, 504 S.E.2d at 652 (quoting *Harris*, 510 U.S. at 25 (Ginsburg, J., concurring)).

In his effort to sustain the jury's verdict, Lack seeks to divorce *Willis*'s requirement that the conduct be gender-based from its requirements of unwelcomeness and severity. These elements, however, cannot be analyzed in such an isolated fashion. Lack cannot rely on the sex-specific nature of the "F-ing the cashiers" or "small bag" comments, without producing plausible evidence that such comments were animated by Bragg's hostility to Lack as a man.

To further support his position, Lack identifies several comments that he perceived as sexual overtures. He emphasizes the frequency and sexual tone of Bragg's "I'm coming, Chrissy" assurances, and cites Bragg's crotch-grabbing gestures, as evidence that Bragg harbored — indeed pursued — a sexual interest in Lack. While there is some authority indicating that an earnest sexual solicitation by a harasser will support an inference that the harassment was because of the plaintiff's sex, *see, e.g.*, *Tietgen v. Brown's Westminster Motors, Inc.*, 921 F. Supp. 1495, 1502 (E.D. Va. 1996), Bragg's conduct here cannot reasonably be construed as an "earnest sexual solicitation."[8] Accepting Lack's testimony as true, Bragg taunted Lack with sexual gestures, but he neither proposed sex nor initiated it (as by touching

---

[8]Facially sexual remarks must be evaluated according to their common usage — however vulgar the usage may be. *See, e.g.*, *Johnson v. Hondo, Inc.*, 125 F.3d. 408, 412 (7th Cir. 1997) (noting that when expressions such as "fuck me" and "kiss my ass" are used by men speaking to other men, often "their use has no connection whatsoever with the sexual acts to which they make reference — even when they are accompanied . . . with a crotch-grabbing gesture").

Lack).[9] Indeed, Lack himself acknowledged that Bragg did not limit his jokes, lewd behavior, or sexual attention to him individually, or to men more generally. Bragg's "oh my rod" comments were apparently provoked by the sight of attractive women; similarly, it was Lack who described his supervisor's propensity for "checking out" attractive women at the checkout counter. Viewed in the light most favorable to Lack, his evidence is nonetheless insufficient to support the "earnest sexual solicitation" theory.

Moreover, Lack fails to come to grips with the fact that female employees (including his original co-plaintiff Susan Willis) also lodged similar complaints regarding Bragg's behavior. This fact undercuts Lack's claim to a substantial extent. In its totality, the evidence compels the conclusion that Bragg was just an indiscriminately vulgar and offensive supervisor, obnoxious to men and women alike. While the female employees' complaints do not, as a matter of law, preclude Lack's claim, *compare Holman v. Indiana*, 211 F.3d 399, 402 (7th Cir. 2000) (Title VII does not provide relief against the "equal opportunity" or "bisexual" harasser who "treat[s] both sexes the same (albeit badly)"), they do present an imposing obstacle to proving that the harassment was sex-based. To prevail in such a situation, a male plaintiff might "offer direct comparative evidence about how the alleged harasser treated members of both sexes[.]" *Oncale*, 523 U.S. at 80-81. Lack, however, failed to offer such evidence — or any other basis for a jury to conclude that Bragg's conduct was not just sexually tinged harassment, but was instead harassment because of sex.

IV.

In holding same-gender harassment claims cognizable under the W. Va. Act, the Supreme Court of Appeals of West Virginia not only adopted the legal rule of *Oncale*, but also adopted its cautious posture.

---

[9] We do not intend to suggest that a sexual advance — or even sexual attraction — is required under either the W. Va. Act or Title VII. In the specific context of same-sex harassment claims, *Oncale* instructs that a harasser need not be motivated by sexual desire to satisfy the "because of sex" element. *See* 523 U.S. at 80. It is simply one evidentiary route available to a plaintiff seeking to establish same-sex harassment. *Id.*

Indeed, the *Willis* court concluded its opinion with the compelling observation:

> The real aim of harassment litigation . . . are those situations when "an employee is made the unwilling target of repeated, sexually-charged and gender-based remarks, when he is threatened with sexual assault, and when he is subjected to unwelcome sexual contact."

504 S.E.2d at 654 (quoting *Doe v. City of Belleville*, 119 F.3d 563, 591-92 (7th Cir. 1997)). In our view, those meritorious situations envisioned in *Willis* and *Oncale* are readily distinguishable from the vulgar banter and offensive behavior presented in this case.

Because Lack failed to demonstrate gender-based harassment, the jury's verdict cannot be sustained. Accordingly, we reverse and remand so that judgment may be entered in favor of the defendants.

*REVERSED AND REMANDED*