UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DIANE BRENDSEL,
                    *Plaintiff-Appellee,*

and

LELAND C. BRENDSEL,
                              *Plaintiff,*

v.                                                      No. 00-1742

MARVIN LUMBER AND CEDAR
COMPANY, d/b/a Marvin Lumber and
Doors, Incorporated,
                    *Defendant-Appellant.*

DIANE BRENDSEL,
                    *Plaintiff-Appellant,*

and

LELAND C. BRENDSEL,
                              *Plaintiff,*

v.                                                      No. 00-1743

MARVIN LUMBER AND CEDAR
COMPANY, d/b/a Marvin Lumber and
Doors, Incorporated,
                    *Defendant-Appellee.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-99-1373-A)

Argued: December 3, 2001

Decided: March 8, 2002

Before WIDENER, MICHAEL, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Thomas Henry Boyd, WINTHROP & WEINSTINE, P.A., St. Paul, Minnesota, for Appellant. Jack McKay, SHAW PITT-MAN, Washington, D.C., for Appellee. **ON BRIEF:** Donald J. Brown, WINTHROP & WEINSTINE, P.A., St. Paul, Minnesota; Raymond D. Battocchi, GABELER, BATTOCCHI & GRIGGS, L.L.C., McLean, Virginia, for Appellant. Erica S. Simpson, SHAW PITTMAN, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Diane Brendsel, in a trial by jury, was awarded damages of $70,000 against Marvin Lumber and Cedar Co. for breach of contract. The district court entered judgment on the verdict, which it declined to set aside, from which action Marvin appeals. We affirm.

I.

Mrs. Brendsel and her husband contracted and built their McLean, Virginia home in 1988. Windows and doors manufactured by Marvin were used in the construction of the house. A wood preservative, sold by PPG, commonly known as PILT, was used by Marvin to treat the

windows and doors. Unfortunately, PILT permitted rotting of these units. Marvin customers began complaining about the premature rot in the early 1990's. Marvin began testing the windows and PILT to confirm the problem, and subsequently sued PPG in April 1994.[1]

In an effort to remedy the premature rotting of its product, Marvin dealt with customers as problems arose through manufacturing and delivering replacement windows to affected homeowners. In addition, Marvin often supplemented the replacement windows with reasonable installation and painting costs. This policy of providing installation and painting costs changed in the Spring of 1999 after Marvin's initial legal setback in its suit against PPG. First, the new written policy delegated power to the distributors to handle customer complaints; this new policy offered rebated windows, as opposed to free replacements, and eliminated reimbursement. Second, the policy specified that existing written commitments by Marvin would be honored.[2]

Mrs. Brendsel found deterioration in her windows and doors in 1997. She reported her problem and was told that Marvin would take steps to respond. Marvin corresponded with Mrs. Brendsel in various letters. The first from Marvin, dated September 26, 1997, was in response to Mrs. Brendsel's initial complaint. The letter acknowledged receipt of Mrs. Brendsel's complaint and then stated:

> As part of the resolution process, we would like to do an inspection of the Marvin units at your residence. Once that inspection is complete and the gathered information is returned to our office, the results will be analyzed by our research team. Based on that analysis, we will then be working with you to develop an appropriate resolution.

---

[1]Marvin suffered an adverse judgment in its suit against PPG which is now on appeal.

Judgment was entered prior to trial against Mr. Brendsel, which is not an issue in this appeal.

[2]"Existing commitments Marvin Windows and Doors have in writing will be honored. If Marvin has provided a formal written proposal to repair or replace certain units (including labor where appropriate), that commitment would be honored."

After an inspection in January of 1998, Marvin determined that 37 window and door units needed to be replaced. Its second letter followed on February 24, 1998. It read:

> Dear Ms. Brendsel,
>
> This letter is to confirm our intent to provide replacement product for your residence at 8900 Gallant Green, Mclean, VA 22102 . . . . [a listing of the units followed]
>
> At this time, Marvin Windows & Doors will need your assistance in finding contractors that can submit their bid for the replacement of the above listed product. Please obtain two bids for our analysis and subsequent labor resolution. I have enclosed three *Contractor Bid Forms* for this purpose. A completed bid form must accompany or represent any bid submitted for our review. The product can be ordered after an appropriate labor resolution has been established . . . .
>
> I am also sending you a *Customer Satisfaction Form.* The purpose of this form is to confirm that you are satisfied with the replacement product and the work the contractor did. When the job is complete and if you are satisfied with the contractor's work, please sign and date this form and have your contractor do the same. . . .

Mrs. Brendsel obtained bids for removal and replacement of the damaged units from Benchtop Carpentry (Benchtop) and SEI Design and Build (SEI). Both of these bids did not comply with the specific units Marvin intended to replace.[3] Mrs. Brendsel relayed these bids to Marvin. Marvin responded on July 23, 1998, stating that they still intended to provide replacement product for the majority of windows Mrs. Brendsel had requested and requesting a rebid by Benchtop. Marvin's representative, Goetz, was in direct contact with Benchtop

---

[3]Benchtop's bid was under inclusive — it failed to provide for replacement of all of the windows Marvin specified. SEI's bid was over inclusive — it provided for replacement of every window in Mrs. Brendsel's home.

concerning this rebid.[4] He also asked Mrs. Brendsel to allow two additional contractors to inspect her home, which she agreed to do. In November 1998, Goetz told Mrs. Brendsel that the only issue remaining was one of window storage.[5]

During these communications, Marvin changed its policy regarding replacement units and installation costs. On March 26, 1999, Marvin did, however, offer to replace the window and door units, in addition to offering $6,976 toward labor costs.[6] Mrs. Brendsel considered this amount inadequate and subsequently sued Marvin for breach of contract and breach of implied warranty of merchantability.

The district court held that the Brendsels' breach of implied warranty claim was barred by the U.C.C.'s four-year statute of limitations. It allowed the breach of contract claim, which proceeded to trial, and the jury awarded Mrs. Brendsel $70,000 in damages. Marvin appeals the judgment entered on this jury award. Mrs. Brendsel cross-appeals, claiming the district court erred in dismissing her U.C.C. claim. Since we affirm the judgment of the district court on the breach of contract issue, we do not address Mrs. Brendsel's cross-appeal.

## II.

This court has jurisdiction under 28 U.S.C. §1291. We review de novo a district court's denial of a Rule 50 motion for judgment as a matter of law. *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 259 (4th Cir. 2001). We view the facts in the light most favorable to the non-moving party. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 404-05 (4th Cir. 1999). In doing so, if there is sufficient evidence for a reasonable jury to have found in Mrs. Brendsel's favor, we affirm the jury verdict. *Lack*, 240 F.3d at 259. Judgment as a matter of law is proper only

---

[4]Goetz also requested Benchtop bid on security wiring replacement and window storage.

[5]Goetz never mentioned to Mrs. Brendsel that the rebid or negotiations with Benchtop were unreasonable or unproductive.

[6]The $6,976 for labor amounts to $109 per replaced unit. A $700 per unit cost was claimed by Goetz, a Marvin representative, as a reasonable installation figure in his testimony.

when there can be but one reasonable conclusion as to the proper judgment. *Chaudhry*, 174 F.3d at 405.

The issues in this case are whether a contract existed and whether it was breached. Evidence was presented to the jury concerning the elements of a contract[7] and damages for breach.[8] Moreover, the jury instructions carefully delineated the requirements of a contract, specifically the nature of a valid offer, the need for a meeting of the minds on disputed terms, the adequate modes of acceptance, the need for consideration, and the proof needed as to damages for breach of contract. As noted in *Charbonnages de France*,

> Disputes about whether a contract has or has not been formed as the result of words and conduct over a period of time are quintessentially disputes about "states of mind," since they involve not only the subjective intentions had by the several parties but what "states of mind," what understandings, their manifestations of intention may have

---

[7]Evidence was presented of an offer, acceptance, and consideration: an offer, evidenced through the various letters and verbal communications between Marvin and Mrs. Brendsel; an acceptance, evidenced through Mrs. Brendsel's actions in allowing contractors to inspect her house and in fully complying with Marvin's requests; and consideration, in expending numerous hours obtaining the bids and showing her house to these contractors, not to mention the damage to the windows and doors and the satisfaction of her claim.

[8]One Gugino testified to the damage amount. The jury also heard testimony relating to installation and painting costs from Benchtop. Even if the district court may have technically erred in permitting Gugino's testimony, his name not appearing on the witness list as an expert but only as a person knowledgeable about the facts as to "(1) the deteriorated windows/doors in the Brendsel home; and (2) the cost of replacement and installation for non-Marvin windows of the Brendsel home," we are of opinion that Marvin had fair notice of the substance of Gugino's testimony well in advance of the trial. All of the parties to this litigation had known about the damage to the windows and doors for about three years before the trial, and, in any event, this is not a case which should be reversed because of technical non-compliance with a rule or procedural order which had no real effect on the litigation. We do not think any substantial right of Marvin was violated. See 28 U.S.C. § 2111.

induced in others. These subjective states and objective manifestations of intention present interpretive issues traditionally understood to be for the trier of fact.

*Charbonnages de France v. Smith*, 597 F.2d 406, 414-15 (4th Cir. 1979).

In our opinion the case at hand is a classic case, as described just above in *Charbonnages*, with evidence manifested by writings, conversations, and actions, as well as a description of the damage to the windows and doors which brought about this suit. We are further of opinion that the verdict of the jury is supported by the evidence, the jury was properly instructed, and the district court did not commit reversible error.

The judgment of the district court is accordingly

*AFFIRMED*.